NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

DOCKET NO.  A-5481-14T3

KEAN FEDERATION OF TEACHERS,
JAMES CASTIGLIONE, and
VALERA HASCUP,

     Plaintiffs-Respondents/
     Cross-Appellants,

v.

ADA MORELL, BOARD OF TRUSTEES OF
KEAN UNIVERSITY, and KEAN
UNIVERSITY, a body Corporate and
Politic,

     Defendants-Appellants/
     Cross-Respondents.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **February 8, 2017** |
| **APPELLATE DIVISION** |

Argued October 6, 2016 — Decided February 8, 2017

Before Judges Fuentes, Carroll, and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-306-15.

James P. Lidon argued the cause for appellants/cross-respondents (McElroy, Deutsch, Mulvaney & Carpenter, attorneys; John J. Peirano, of counsel; Mr. Lidon, on the brief).

Robert A. Fagella argued the cause for respondents/cross-appellants (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Mr. Fagella, on the briefs).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

The Open Public Meetings Act ("OPMA"), N.J.S.A. 10:4-6 to -21, promotes the democratic value of transparency in governmental affairs and protects the public's right "to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation, policy formulation, and decision making." Opderbeck v. Midland Park Bd. of Educ., 442 N.J. Super. 40, 55 (App. Div.) (quoting N.J.S.A. 10:4-7), certif. denied, 223 N.J. 555 (2015). In this appeal, we are required to examine two distinct obligations the OPMA imposes on public bodies: (1) to make meeting minutes "promptly available" to the public as required by N.J.S.A. 10:4-14; and (2) to provide employees, whose employment status may be adversely affected, with notice informing them of their right to compel their public employer to discuss their employment status in public. N.J.S.A. 10:4-12b(8); Rice v. Union Cty. Reg'l High Sch. Bd. of Educ., 155 N.J. Super. 64, 73 (App. Div. 1977).

The matter before us originated in the Law Division as an action in lieu of prerogative writs filed by plaintiffs Kean Federation of Teachers ("KFT");[1] KFT President James Castiglione; and Valera Hascup, a Kean University faculty member. Plaintiffs

_____

[1] KFT is a labor organization that represents all of Kean University's full-time faculty members.

alleged the Board of Trustees of Kean University and Ada Morell in her capacity as Chairperson[2] (collectively "the Board") violated the OPMA when they failed to make the Board's minutes for the September 15, 2014 and December 6, 2014 meetings "promptly available" to the public, as required by N.J.S.A. 10:4-14. Plaintiffs also claimed the Board terminated Hascup's position without sending her the notice required by this court's decision in Rice, supra, 155 N.J. Super. at 74.

After joinder of issue, the matter came before the trial court by way of cross-motions for summary judgment. Plaintiffs argued the Board violated N.J.S.A. 10:4-14 when it took ninety-four days to release the minutes of a meeting held on September 15, 2014, and fifty-eight days to release the minutes of a meeting held on December 6, 2014. The trial judge held in plaintiffs' favor and concluded the Board failed to make these minutes "promptly available[.]" N.J.S.A. 10:4-14. To bring the Board in compliance with this statutory requirement, the trial court issued a permanent injunction requiring the Board to make the minutes of all future meetings available to the public "within forty-five days[.]"

With respect to the Rice notice issue, the trial judge found the Board did not violate the OPMA when it voted in public

---

[2] N.J.S.A. 18A:64-4.

session not to retain Valera Hascup without first apprising her in writing of her right to waive the privacy protections afforded to public employees under N.J.S.A. 10:4-12b(8). The judge concluded that absent any discussion of Hascup's employment status during closed session, or any stated intention to engage in such discussion, the OPMA does not require the Board to issue a Rice notice.

The Board now appeals, arguing the trial court erred when it found its meeting minutes were not made "promptly available" in accordance with N.J.S.A. 10:4-14. The Board claims the motion judge did not properly consider the circumstances preventing the Board from releasing its minutes earlier. The Board also argues that a permanent injunction requiring the release of official minutes within forty-five days is inconsistent with the fact-sensitive approach reflected in N.J.S.A. 10:4-14 and unduly interferes with the Board's prerogative to manage its affairs.

Plaintiffs filed a cross-appeal challenging the trial judge's ruling that Hascup did not have a right to a Rice notice. Plaintiffs argue that every personnel action scheduled before the Board involves the potential for discussion of private matters. According to plaintiffs, N.J.S.A. 10:4-12b(8) gives affected employees "the right to decide whether a public

or private discussion is the preferred forum for consideration of a reappointment application." Plaintiffs assert a <u>Rice</u> notice gives the affected employees an opportunity to exercise this right to choose.

Because the trial court decided these issues as a matter of law, our review is de novo, <u>State in Interest of K.O.</u>, 217 <u>N.J.</u> 83, 91 (2014); we employ the same standards used by the trial judge. <u>Globe Motor Co. v. Igdalev</u>, 225 <u>N.J.</u> 469, 479 (2016). We are compelled to grant summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." <u>R.</u> 4:46-2(c). <u>See also</u> <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 <u>N.J.</u> 520, 540 (1995).

Applying this standard to the undisputed facts, we agree with the trial judge that the Board failed to make its minutes "promptly available" to the public, as required by <u>N.J.S.A.</u> 10:4-14. However, we reverse and vacate the permanent injunction requiring the Board to make all future minutes available within forty-five days of each meeting. Although the OPMA expressly authorizes the Superior Court to issue injunctive relief as a means of enforcing its provisions, <u>N.J.S.A.</u> 10:4-16,

the forty-five-day deadline imposed by the court here is inconsistent with the implicit, fact-sensitive approach the Legislature endorsed by using the words "promptly available" in N.J.S.A. 10:4-14. In this case, a judicially imposed permanent deadline for the release of the minutes usurps one of the Board's managerial prerogatives and invites continuous judicial involvement in the form of enforcement by motion practice.

With respect to plaintiffs' cross-appeal, we disagree with the trial judge that a Rice notice was not required in this case because the Board did not discuss Hascup's reappointment in private session. Acceptance of the Board's position would sanction members of public bodies to take action on personnel matters without discussion or deliberation, for fear of violating the affected employees' privacy rights. As plaintiffs correctly point out, the fact that the Board voted not to reappoint Hascup without discussion in order to avoid sending her a Rice notice obscured the decision-making process. This is precisely what the Legislature intended to prevent when it adopted the OPMA.

We hold that a public body is required to send a Rice notice whenever it intends to act on matters "involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of,

6

promotion, or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the public body[.]" N.J.S.A. 10:4-12b(8). Here, the Board violated the OPMA by failing to send a Rice notice to all of the employees whose employment status was scheduled to be affected by the action the Board took at its December 6, 2014 meeting.

I

Kean University is a State-funded institution of higher education with campuses in Union County and Ocean County. The Board has "general supervision" over the conduct of the University and is vested with "the power and duty" to govern and set policy over every aspect of the University's mission and operation. N.J.S.A. 18A:64-6. Although subject to the regulatory authority of the State Commissioner of Education, the Legislature has expressly endorsed a policy favoring decentralization and autonomy, giving our public colleges and universities "a high degree of self-government[.]" N.J.S.A. 18A:64-1.

As a matter of law "each board shall have not less than seven nor more than [fifteen] members." N.J.S.A. 18A:64-3. The record in this appeal does not include a description of the size

and composition of the Board during the relevant time period.[3] Defendant, Ada Morell, is the Chairperson. The Board has the power to determine its size and composition. Ibid. The Board is statutorily required to conduct an annual organizational meeting during the second week of September to elect a Chairperson and a Vice-Chairperson and "such other officers as the [B]oard shall determine." N.J.S.A. 18A:64-4. Thereafter, the Board "may meet at such other times and at such places as it may designate." Ibid.

In academic year 2014-2015, the Board held the statutorily mandated organizational meeting on September 15, 2014. Thereafter, the Board met four more times: December 6, 2014,

---

[3] Kean University's official website describes the current composition of the Board of Trustees as consisting of fourteen members and one student-member. Board of Trustees Members, Kean University (last visited Jan. 23, 2016), http://archive.is/b4bn6. Student-members are not authorized to participate in three statutorily specified matters, including:

> Any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion or disciplining of any specific prospective officer or employee or current officer or employee employed or appointed by the board, unless all the individual employees or appointees whose rights could be adversely affected request in writing that the matter or matters be discussed at a public meeting.
>
> [N.J.S.A. 18A:64-3.1(d)(1) (emphasis added).]

March 2, 2015, May 11, 2015, and June 29, 2015. The trial court previously found the Board's annual meeting schedule dictated how and when meeting minutes were made available to the public:

> [I]t has been the Board's practice to consider for approval at each meeting the minutes of the immediately previous meeting. In the case at hand, that practice resulted in the minutes of the December 7, 2013 meeting being approved at the next regularly scheduled meeting of March 3, 2014 and released on March 11, 2014, which was six (6) days after the approval.

The Board conducted the December 6, 2014 meeting at the University's Ocean County campus. The Board voted to approve the President's reappointment and non-appointment of faculty members during the meeting's public session, and without discussion or deliberation of any kind. It did not reappoint Hascup. The Board also approved the minutes for the meeting held on September 15, 2014.

On December 18, 2014, Castiglione requested the minutes of the September 15, 2014 and December 6, 2014 meetings. The Board's Executive Director, Audrey M. Kelly, certified that "[o]n or about December 22, 2014, the Office of the University's Custodian of Records advised the Board of Trustees['] Office of an OPRA[4] request for the minutes of the executive sessions of the

---

[4] "OPRA" refers to the "Open Public Records Act," N.J.S.A. 47:1A-1 to -13.

Board's September 15, 2014 and December 6, 2014 meetings." Kelly certified that she was on "leave" from the University from December 15, 2014 through January 5, 2015, and thus did not learn of the request for copies of these minutes until she returned. Kelly does not describe in her certification how many employees are assigned to the Executive Director's office and what measures, if any, the University has in place to ensure that the office continues to function in her absence.

Because Castiglione requested the executive session minutes for the meeting held on September 15, 2014, Kelly certified the minutes were "reviewed with counsel" and redacted to comply with the trial court's prior ruling. The minutes were released on February 2, 2015.[5] With respect to the executive session minutes for December 6, 2014, Kelly acknowledged being "advised" of the court's recommendation to release the minutes within thirty to forty-five days; she was also aware of the court's suggestion to explore the possibility of using technology to speed up the approval and release of the minutes.

Kelly certified, however, that after reviewing the OPMA, she did not find any legally sustainable means of using

_____

[5] Kelly mentions in her certification that the minutes were released "on the agreed upon extension date of February 2, 2015." We infer this "extension" relates to the custodian's obligations under OPRA. See N.J.S.A. 47:1A-5(i).

A-5481-14T3

technology to speed up the release of the minutes. According to Kelly, the OPMA requires the Board to approve the release of the minutes in a formal meeting, which would trigger the OPMA's notice requirements. Thus, under the Board's five meetings per year schedule, the earliest the December 6, 2014 meeting minutes could be approved was at the meeting scheduled for March 2, 2015. The trial court found the "Board approved the two-page executive session minutes of the December 6, 2014 meeting at its March 2, 2015 meeting, and then redacted and released the minutes to plaintiffs on March 4, 2015, which is fifty-eight (58) business days or eighty-eight (88) calendar days after the December 6, 2014 meeting."

II

Availability of Minutes

The Board argues the release of the minutes within this timeframe satisfied the "promptly available" standard in N.J.S.A. 10:4-14. The Board notes that approval of the minutes must be done in a formal public meeting. Thus, to comply with the trial court's forty-five-day timeframe, the Board would have "to schedule, advertise and hold a minimum of four to five additional meetings each year, resulting in an 80% to 100[%] increase in the number of meetings[.]"

The trial judge rejected the Board's argument, finding any inconvenience to the Board was outweighed by the public policy in support of making its meeting minutes "promptly available" to the public. The judge provided the following explanation in support of his ruling:

> The court is mindful that whether a public body satisfies its statutory obligation to make its minutes promptly available would depend on the circumstances of the case. Here, the Board of Trustees at Kean University consists of professionals who have met regularly on the same schedule over the past several years. The executive session minutes eventually produced consisted of two pages, which indicates to the court that the matters discussed in closed session were not lengthy nor required extensive redactions. Moreover, the subject matter of the minutes would be important to the faculty, student body, as well as the public, with respect to actions taken by the Board of Trustees of Kean University. Considering these factors, the production of the minutes in question by the Board after ninety-four business days and fifty-eight business days did not satisfy the "promptly available" requirement of N.J.S.A. 10:4-14.

Given the absence of any published decisions addressing this issue from either the Supreme Court or this court, the trial judge decided to follow the multifactor analysis articulated in Matawan Reg'l Teachers Assoc. v. Matawan-Aberdeen Reg'l Bd. of Educ., 212 N.J. Super. 328, 333 (Law Div. 1986). Although the approach in Matawan contains a number of useful common sense suggestions, we decline to adopt it as the standard

to follow in deciding when a public body has made the official minutes of its meetings "promptly available" to the public under N.J.S.A. 10:4-14.

We apply instead the well-settled principles of statutory construction our Supreme Court has reaffirmed numerous times. In interpreting a statute, our goal is to ascertain and enforce the intent of the Legislature. Cashin v. Bello, 223 N.J. 328, 335 (2016). "In most instances, the best indicator of that intent is the plain language chosen by the Legislature." Ibid. (quoting State v. Gandhi, 201 N.J. 161, 176 (2010)). Unless a different meaning is expressly indicated, we must read and construe words in a statute by giving them their generally accepted meaning. N.J.S.A. 1:1-2. Finally, we must construe the OPMA liberally "in order to accomplish its purpose and the public policy of this State as set forth in [N.J.S.A. 10:4-7]." N.J.S.A. 10:4-21.

The words "promptly available" in N.J.S.A. 10:4-14 require public bodies to approve and make their meeting minutes available to the public in a manner that fulfills the Legislature's commitment to transparency in public affairs. It requires a public body to adopt a protocol that makes the availability of its meeting minutes a priority. The approval of meeting minutes cannot be treated as a mere ministerial

function, or worse yet, a technical annoyance. The expeditious release of meeting minutes is a vital part of the OPMA's promise to bring public affairs from obscurity to the light of day. This requires those who agree to serve on public bodies to act without delay and take the action required to make the meeting minutes promptly available to the public.

The argument advanced by the Board to justify delaying the approval of its minutes by as much as eighty-eight days is unpersuasive. The position of trustee of a public university governing board carries great responsibilities.

Trustees are entrusted with the power and duty to:

> b. Determine the educational curriculum and program of the college consistent with the programmatic mission of the institution . . . ;
>
> c. Determine policies for the organization, administration and development of the college;
>
> d. Study the educational and financial needs of the college; annually acquaint the Governor and Legislature with the condition of the college; and prepare and present the annual budget to the Governor, the Division of Budget and Accounting in the Department of the Treasury and the Legislature in accordance with law;
>
> e. Disburse all moneys appropriated to the college by the Legislature and all moneys received from tuition, fees, auxiliary services and other sources;

A-5481-14T3

f. Direct and control expenditures and transfers of funds appropriated to the college and tuition received by the college, in accordance with the provisions of the State budget and appropriation acts of the Legislature, reporting changes and additions thereto and transfers thereof to the Director of the Division of Budget and Accounting in the State Department of the Treasury and as to funds received from other sources, direct and control expenditures and transfers in accordance with the terms of any applicable trusts, gifts, bequests, or other special provisions. All accounts of the college shall be subject to audit by the State at any time;

g. In accordance with the provisions of the State budget and appropriation acts of the Legislature, appoint and fix the compensation of a president of the college, who shall be the executive officer of the college and an ex officio member of the board of trustees, without vote, and shall serve at the pleasure of the board of trustees;

h. Notwithstanding the provisions of Title 11, Civil Service, of the Revised Statutes, upon nomination by the president appoint a treasurer and such deans and other professional members of the academic, administrative and teaching staffs . . . as shall be required and fix their compensation and terms of employment in accordance with salary ranges and policies which shall prescribe qualifications for various classifications and shall limit the percentage of the educational staff that may be in any given classification;

i. Upon nomination by the president, appoint, remove, promote and transfer such other officers, agents or employees as may be required for carrying out the purposes of the college and assign their duties,

15

A-5481-14T3

determine their salaries and prescribe qualifications for all positions, all in accordance with the provisions of Title 11, Civil Service, of the Revised Statutes; [and]

j. Grant diplomas, certificates and degrees[.]
[N.J.S.A. 18A:64-6 (emphasis added).]

We have highlighted subsections (i) and (j) to make clear the interrelationship between these two important responsibilities the Legislature entrusted to the trustees of our State's public colleges and universities: to employ and retain faculty capable of transmitting to future generations the immeasurable gifts of intellectual enlightenment. The men and women who have willingly agreed to serve on these Boards and donate their time and talents without compensation have shown the metal of their character. We expect them to fulfill their responsibilities consistent with the values and public policy embodied in the OPMA. If this requires the Board to meet ten times per year to make the minutes of its meetings "promptly available" to the public, so be it.

## Injunctive Relief

In the companion opinion we release simultaneously with this opinion, the trial judge was also required to address whether the Board made its meeting minutes available to the public in a prompt fashion as required by N.J.S.A. 10:4-14.

<u>Kean Fed'n of Teachers v. Bd. of Trs. of Kean Univ.</u>, No. A-2332-14 (App. Div. Feb. ____ 2017) ("<u>Kean</u> II"). In a letter-opinion dated September 18, 2014, the judge made the following findings:

> Here, the court finds that the "promptly available" requirement of <u>N.J.S.A.</u> 10:4-14 was not met by releasing the approved closed session minutes ninety-seven (97) days after the meeting. The court is mindful that OPMA provides no temporal framework to public bodies regarding their statutory obligation to make approved minutes of their meeting "promptly available."
>
> . . . .
>
> In light of no specific statutory requirement, the custom and practice of a particular public body must be afforded some consideration, as long as they are reasonable.
>
> . . . .
>
> Nevertheless, it is the court's view that the passage of ninety-seven (97) days fails to satisfy the "prompt availableness" requirement. If a public body meets only once or twice a year, then arguably some steps need to be taken to generate approved minutes in a more timely fashion. Although such is not the case here, the delay of ninety-seven (97) days is simply not prompt under the circumstances here. The minutes at issue contain[] subject matters that are important to the teachers directly affected by the Board['s] action[s].

Under these circumstances, the court <u>suggested</u> that the Board release its meeting minutes "within 30 to 45 days." As the record shows, the Board did not heed the trial court's

suggestion. Plaintiffs argued to the trial court that the Board's ninety-four-day delay in releasing the minutes of the September 15, 2014 meeting and fifty-eight-day delay in releasing the minutes of the December 6, 2014 meeting amounted to a "willful and deliberate" disregard of the court's authority. Plaintiffs initially requested that the court void the outcome of the December 6, 2014 meeting, impose monetary sanctions against the Board and its Chairperson, and award counsel fees. Plaintiffs withdrew their application for the imposition of monetary sanctions at the oral argument session held on April 24, 2015.

After considering the "nature, quality, and effect of the noncompliance in fashioning a corrective remedy," the court concluded injunctive relief was "the appropriate remedy in this case." The court provided the following explanation for its decision:

> Plaintiffs do not allege specific adverse effects of defendants' past violations nor provide sufficient evidence to show that defendants' violations were intentional. The concern of the court is the Board's future compliance. Injunctive relief provides the best assurance of defendants' future compliance. Therefore, the court orders that the Board conform in the future to N.J.S.A. 10:4-14 by making meeting minutes available to the public within forty-five days.

The Supreme Court has recognized that the Legislature provided "three forms of remedy for an OPMA violation: a prerogative writs action seeking to void any action taken at a meeting that did not meet OPMA's requirements, N.J.S.A. 10:4-15; injunctive relief to assure future compliance, N.J.S.A. 10:4-16; and imposition of fines, N.J.S.A. 10:4-17." McGovern v. Rutgers, 211 N.J. 94, 112 (2012). The Court in McGovern also noted that injunctive relief under N.J.S.A. 10:4-16 may be appropriate if "'a pattern of non-compliance has been demonstrated.'" Ibid. (quoting Burnett v. Gloucester Cty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 246 (App. Div. 2009)).

The Supreme Court has also cautioned judges to fashion a remedy that considers "the nature, quality and effect of the noncompliance of the particular offending governmental body[.]" Polillo v. Deane, 74 N.J. 562, 579 (1977). In our view, a permanent injunction requiring the Board to prospectively make their meeting minutes available within forty-five days of the conclusion of the meeting, regardless of the circumstances, undermines the Board's autonomy by usurping a quintessential managerial prerogative. This approach is also facially inconsistent with the fact-sensitive standard the Legislature adopted in N.J.S.A. 10:4-14. The imposition of a judicially

crafted deadline to make the minutes of Board meetings available to the public invites enforcement by motion practice under Rule 1:10-3.

Judges are ill suited to micromanage the internal affairs of a Board entrusted by the Legislature with the "government, control, conduct, management and administration" of our State's public colleges and universities, N.J.S.A. 18A:64-2, and whose members are appointed by the Governor, with the advice and consent of the Senate, N.J.S.A. 18A:64-3, and serve without compensation, N.J.S.A. 18A:64-5. As a matter of comity, a judicial remedy should strive to strike a balance between the public policy codified in the OPMA and respect for the prerogatives of independent public bodies.

The Board is now on notice that five meetings per year will not allow it to make its meeting minutes "promptly available" to the public. We agree with the trial judge that waiting two or three months to release the minutes does not comply with the mandate of the statute. However, an inflexible forty-five-day deadline for the release of the minutes is managerially, logistically, and legally unsound because it leaves the door ajar to permanent judicial entanglement. Having said this, we urge the Board to seriously consider increasing the number of

times it meets annually. It is clear that the continuation of its present meeting schedule is legally untenable.

III

Rice Notice

In <u>Rice</u>, we held that the personnel exception codified in <u>N.J.S.A.</u> 10:4-12b(8) could only be waived "if all employees whose rights could be adversely affected decide to request a public hearing[.]" <u>Rice</u>, <u>supra</u>, 155 <u>N.J. Super.</u> at 73. To give the affected employees the opportunity to invoke this inchoate right, we imposed upon the public body employer the obligation to provide the affected employees with reasonable advance notice "to enable them to (1) make a decision on whether they desire a public discussion[;] and (2) prepare and present an appropriate request in writing." <u>Ibid.</u>

Hascup's appointment as an Associate Professor of Nursing was scheduled to expire at the end of academic year 2014-2015. In her role as the Board's Executive Director, Kelly submitted a certification that described the process for reappointing faculty members whose terms of employment expire at the end of the academic year. According to Kelly, the process "culminates in a determination by the [University] President [on] whether to recommend to the Board that each such faculty member be reappointed." "[A]pproximately three weeks in advance" of the

21

Board's public meeting, the Board sends a letter to the affected faculty members notifying them if the President has recommended their reappointment.

Here, plaintiffs' counsel sent a letter to the Board's attorney advising the Board that it must send Rice notices at least two weeks before the scheduled meeting to ensure that affected faculty can exercise their rights under the law. The Board did not comply. Instead, as Kelly described in her certification, President Dawood Farahi sent a letter dated November 14, 2014, informing Hascup that he had decided not to recommend her reappointment. The letter reads as follows:

> After careful examination of your application for reappointment and consideration of your appeal and accompanying documents, I will not be recommending to the Kean University Board of Trustees that your contract be renewed for the academic year 2015-2106.
>
> This letter is formal notification that I will not nominate you for reappointment to the Board of Trustees at the December 6, 2014 meeting.
>
> [(Emphasis added).]

Kelly described in her certification what transpired after President Farahi sent this letter to Professor Hascup.

> A meeting of the Board is held in early December of each year to consider, among other items, applications for reappointment of faculty members whose appointments to the faculty would be expiring at the end of the

current academic year absent a resolution by the Board . . . granting reappointment. In the 2014-2015 academic year, that meeting was held on December 6, 2014.

Prior to the early December Board meeting at which the Board considers the reappointment of faculty, a subcommittee of the Board[,] known as the Academic Policy and Programs Committee[,] meets to consider the recommendations of the President concerning reappointments and to reach a consensus concerning the recommendations of the President and the recommendations that the Academic Policy and Programs Committee will provide to the full Board at the early December meeting. <u>The recommendations of the Academic Policy and Programs Committee are presented to the Board at its early December meeting in the form of a personnel report entitled Faculty Reappointments and Faculty Non-Reappointments</u>.

[(Emphasis added).]

Kelly attached to her certification a copy of the agenda for the Board meeting held on December 6, 2014. According to Kelly, on November 29, 2014, the tentative agenda for the Board's December 6, 2014 meeting was posted on the University's website and emailed to the KFT and other groups having an interest in the University.

The "report" containing the recommendations of the Academic Policy and Programs Committee is not part of this record. However, the trial court addressed this issue in the course of oral argument.

23                                                                    A-5481-14T3

THE COURT: And, am I correct then that when . . . Dr. Hascup as one of a slate of non-tenured [t]eachers came up, there was simply a vote by the Board? Do we know that?

ATTORNEY FOR THE BOARD: There was a Resolution to adopt the recommendations of a subcommittee of the Board that had . . . the names and proposed either reappointment or non-reappointment for . . . all the faculty people that were at issue.

THE COURT: And as I read the Agenda, the way it was structured, this took place before they retired into Executive Session?

ATTORNEY FOR THE BOARD: Correct. And . . . there's evidence confirming that in the record and the Certifications.[6]

THE COURT: Do we know when the deliberative process, if any, occurred among Board [m]embers with respect to their decision to appoint or not appoint a non-tenured [t]eacher?

ATTORNEY FOR THE BOARD: The deliberative process largely is centered in . . . the University through the academic ranks[;] the Administration gives recommendations to the Committee. The Committee studies the recommendations and evaluates and agrees, or agrees with them, and . . . then makes its recommendation to the Board. So, the . . . deliberation over the credentials of these people is in the academic ranks in there.

In terms of the full Board, in a public meeting, the extent of discussion is . . . here is the report of the Committee in public session.

THE COURT: The report of the Subcommittee?

---

[6] We infer the Board Attorney is referring to the Kelly certification.

A-5481-14T3

ATTORNEY FOR THE BOARD: I'm sorry, yes. Yeah.

THE COURT: And . . . am I correct, then, that the Subcommittee [report], which apparently is for the purpose of evaluating the reappointment or non-reappointment, . . . was also . . . brought out in public session?

ATTORNEY FOR THE BOARD: [W]ell, I think the report, as we've seen last time, is an oral situation. But there is a . . . presentation of the Resolution that contains the substance to the recommendations.

THE COURT: So we really don't know what was said during a public session absent a transcript; in other words, how this process, . . . the Board of [Trustees], which I think we all agree, elected not to go into Executive Session on this particular issue on December 6[,] [2014]. A slate of non-tenured [t]eachers, I'm inferring from this record, were not reappointed. Do we have any idea what, if anything, was discussed with respect to the decision by the Board to adopt the Resolution not to appoint . . . or reappoint?

ATTORNEY FOR THE BOARD: [T]here [are] Minutes. . . . They're not verbatim transcription[s] of what occurred. And so, I don't know the specifics of what was said. But it was in public session. Plaintiffs are . . . making allegations about public session. And the thing that they have not alleged, which leaves this privacy-based argument hanging in the wind, is that there was any unwarranted invasion of privacy under Section 7 of OPMA, that occurred.

I mean, I think what happened, based upon what we can see from the Minutes, is essentially what would have happened after

closed session, in the sense that, . . . there [were] brief comments, and then [an] introduction of a Resolution[.]

From this point forward, the colloquy between the court and the Board's attorney followed the same line of reasoning. The trial judge summarized the Board's legal position in the following statement to the Board's attorney:

> THE COURT: The legal argument you[] [are] advancing for the University is that there were no <u>Rice</u> Notices needed in this particular instance, <u>because there was no intention on the part of the Board to discuss personnel which could implicate privacy interests in closed session</u>.
>
> ATTORNEY FOR THE BOARD: Correct.
>
> [(Emphasis added).]

Plaintiffs' counsel also summarized his clients' legal position while addressing the trial judge at oral argument:

> PLAINTIFFS' COUNSEL: [The Board's attorney's] argument is an after-the-fact argument. He's saying to you, [addressing the trial court] you know what, my Board didn't have any discussion. So, what unwarranted invasion of privacy is involved?
>
> That's the problem. The notice is to go out in advance, because the discussion might trigger that. So, unless this is a Kabuki play, where . . . everybody's just going through the motions, and maybe they are. That's what I'm concerned about. This Board apparently doesn't want to discuss anybody. And we cannot make them do that. If they want to be a rubberstamp organization, I guess that's the way it will be.

A-5481-14T3

> But the question is, at the time that that recommendation is going to go [to] the Board, is it possible . . . that maybe one Board [m]ember might actually want to assert some authority and have a discussion on what's submitted to them[?]
>
> And, you cannot say, well, it turned out after the fact, we don't talk about anything. We have a Committee. The Committee gives us their recommendation. And we rubber stamp it in public. What's your problem?
>
> The problem is that supposedly, or at least theoretically, . . . we are not supposed to know what the discussion of that Board will be. And we would never know until after the fact.
>
> So what [the Board's attorney] is telling you [addressing the trial court] is, well, if we absolutely know that you'd have to talk about somebody's medical condition, then we would give them . . . a notice. Well, <u>how would anybody know, what any intelligent and rational Board [m]ember might want to ask about somebody before the meeting is even conducted</u>? The notice is because of potential, not what happened after the fact.
>
> [(Emphasis added).]

We conclude plaintiffs' argument correctly captured the disturbing incongruity that results from the approach the Board adopted here. As the Board's Executive Director described in her certification, the Board's Academic Policy and Programs Committee met prior to the December 6, 2014 Board meeting "to consider the recommendations of the President concerning

27                                                    A-5481-14T3

reappointments and to reach <u>a consensus concerning the recommendations of the President</u>[.]" (Emphasis added). This subcommittee then presented its recommendations to the full Board at the public session of the meeting in the form of a resolution containing the names of the faculty members who would be reappointed.

The record shows that the actual discussion concerning whether to appoint a faculty member occurs in private with the members of this subcommittee. As Kelly stated in her certification, "[t]he recommendations of the Academic Policy and Programs Committee are presented to the Board at its early December meeting in the form of a personnel report entitled Faculty Reappointments and Faculty Non-Reappointments." The Board's attorney acknowledged that the deliberative process largely is centered in the University's "academic ranks" and the subcommittee. The only role the Board plays in this process is approving the report of the subcommittee in public session.

It is entirely proper for the Board to delegate to a subcommittee the responsibility of reviewing the President's recommendations concerning the appointments and non-appointments of faculty members and thereafter reporting its own recommendations to the full Board. This approach, however, cannot operate to substitute a Board member's duty to make his

or her own independent decision on such matters. The OPMA is expressly intended to promote meaningful citizen participation in governmental affairs. When a public body acts on a personnel matter without prior discussion of any kind, the silent unexplained vote cast by the Board member reduces the event to a perfunctory exercise, devoid of both substance and meaning. That is the antithesis of what the Legislature intended when it adopted the OPMA. N.J.S.A. 10:4-7.

It is clear to us that the Board uses this approach to avoid sending a Rice notice. To accomplish this, the Board has delegated its core responsibility to discuss personnel matters to the Faculty Reappointments and Faculty Non-Reappointments report. At oral argument before the trial court, the Board's attorney represented that the subcommittee's "report" to the full Board consisted only of the resolution containing the names of the faculty members recommended for reappointment. The agenda for the December 6, 2014 meeting also reflects the opaque nature of the public session. Agenda Item 9 states only "Faculty Reappointments and Faculty Non-Reappointments." Item 9.1 simply states "Personnel Action-Faculty." These two cryptic notations are the only information the Board revealed to the public concerning this critically important phase of the public session.

Sending a <u>Rice</u> notice to all employees whose employment status may be adversely affected is the only means of creating an environment in which the members of public bodies are free to carry out their responsibilities in a manner that guarantees to the public that their ultimate decisions are the product of a thoughtful and deliberative process. <u>N.J.S.A.</u> 10:4-12b authorizes a public body to exclude "the public only from that portion of a meeting at which the public body <u>discusses</u>" any one of nine specifically enumerated matters:

> (1) matter which, by express provision of federal law, State statute, or rule of court shall be rendered confidential or excluded from the provisions of subsection a. of this section;
>
> (2) matter in which the release of information would impair a right to receive funds from the Government of the United States;
>
> (3) material the disclosure of which constitutes an unwarranted invasion of individual privacy such as any records, data, reports, recommendations, or other personal material of any educational, training, social service, medical, health, custodial, child protection, rehabilitation, legal defense, welfare, housing, relocation, insurance, and similar program or institution operated by a public body pertaining to any specific individual admitted to or served by an institution or program, including but not limited to, information relative to the individual's personal and family circumstances, and any material pertaining to admission, discharge, treatment, progress, or condition of any

individual, unless the individual concerned (or, in the case of a minor or an incapacitated individual, the individual's guardian) shall request in writing that the material be disclosed publicly;

(4) collective bargaining agreement, or the terms and conditions which are proposed for inclusion in any collective bargaining agreement, including the negotiation of the terms and conditions thereof with employees or representatives of employees of the public body;

(5) matter involving the purchase, lease, or acquisition of real property with public funds, the setting of banking rates, or investment of public funds, if it could adversely affect the public interest if discussion of the matters were disclosed;

(6) tactics and techniques utilized in protecting the safety and property of the public, provided that their disclosure could impair that protection, or investigations of violations or possible violations of the law;

(7) pending or anticipated litigation or contract negotiation other than in subsection b.(4) herein in which the public body is, or may become, a party, or matters falling within the attorney-client privilege, to the extent that confidentiality is required in order for the attorney to exercise his ethical duties as a lawyer;

(8) matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion, or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the public body, unless all the individual

employees or appointees whose rights could be adversely affected request in writing that the matter or matters be discussed at a public meeting; or

(9) deliberations of a public body occurring after a public hearing that may result in the imposition of a specific civil penalty upon the responding party or the suspension or loss of a license or permit belonging to the responding party as a result of an act or omission for which the responding party bears responsibility.

[(Emphasis added).]

A careful reading of the statute reveals that with the exception of subsections (3), (8), and (9), the remaining six subsections involve matters touching upon the Board's legal privileges and obligations. For example, N.J.S.A. 10:4-12b(4) authorizes the Board to discuss in executive session matters involving collective bargaining agreements. Similarly, N.J.S.A. 10:4-12b(7) authorizes an executive session to discuss matters involving or implicating attorney-client communications.

Conversely, N.J.S.A. 10:4-12b(3) authorizes the Board to exclude the public to protect "the disclosure of [material] which constitutes an unwarranted invasion of individual privacy[.]" (Emphasis added). N.J.S.A. 10:4-12b(9) authorizes the Board to go into executive session when "deliberations of a public body occurring after a public hearing . . . may result in the imposition of a specific civil penalty upon the responding

party[.]"  These subsections protect the individual's right to privacy.

The language the Legislature used in <u>N.J.S.A.</u> 10:4-12b(8) is equally clear on this point.  This is the basis for our decision in <u>Rice</u>.  We recognized that the personnel exception codified in <u>N.J.S.A.</u> 10:4-12b(8) could only be waived "if all employees whose rights could be adversely affected decide to request a public hearing."  <u>Rice</u>, <u>supra</u>, 155 <u>N.J. Super.</u> at 73. Only those who possess a legal right have the commensurate authority to waive that right.

The overarching public policy of the OPMA seeks to encourage, promote, and enhance the public's participation in the democratic process.  This arises from our State's "long 'history of commitment to public participation in government and to the corresponding need for an informed citizenry.'" <u>McGovern</u>, <u>supra</u>, 211 <u>N.J.</u> at 99 (citation omitted).  The Legislature codified the right of the public "to be present at all meetings of public bodies, and <u>to witness in full detail all phases of the deliberation</u> . . . <u>and decision making of public bodies</u>[.]"  <u>N.J.S.A.</u> 10:4-7 (emphasis added).  The Legislature also declared that "secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society[.]"  <u>Ibid.</u>  To

strike a proper balance between the values favoring openness and meaningful access in public affairs and the protection of the privacy rights of individuals, the Legislature codified the nine specifically enumerated exemptions in N.J.S.A. 10:4-12b.

We now hold that a public body is required to send out a Rice notice any time it has placed on its agenda any matters "involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion, or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the public body[.]" N.J.S.A. 10:4-12b(8). This approach will provide all of the affected employees with the opportunity to: (1) decide whether they desire a public discussion, and (2) prepare and present an appropriate request in writing. Rice, supra, 155 N.J. Super. at 73.

The notice requirement in Rice is predicated on the presumption that members of public bodies discuss personnel matters that come before them, question the underlying basis for the course of action recommended by the staff, and deliberate before reaching an ultimate decision that reflects the views of the members. As Justice Stein eloquently noted:

> [T]he personnel exemption focuses on free
> and uninhibited discussion about matters

relating to the hiring, firing, performance, compensation, and discipline of public employees. Such discussions necessarily involve subjective comments and evaluations of employees by members of the public body, and their willingness to comment openly and freely about such matters would obviously be inhibited if the discussion were to be conducted publicly. The statutory exemption for personnel matters, recognizing the potentially-inhibiting effect of public debate about the qualifications, performance, merit, and shortcomings of specific employees, allows that debate to occur in executive session.

[S. Jersey Pub. Co. v. N.J. Expressway, 124 N.J. 478, 493 (1991) (emphasis added).]

Here, the record shows that not sending a Rice notice stifles the Board's deliberative process and inhibits the robust discussion by individual Board members that Justice Stein described as the hallmark of informed decision-making. Only the Board has the authority to decide when to go into executive session. N.J.S.A. 10:4-13. Conversely, only the affected employees have the right to waive the privacy protections afforded to them by the Legislature in N.J.S.A. 10:4-12b(8). A decision not to send Rice notices in which personnel matters are listed as an agenda item implies the Board has decided in advance of the meeting that executive session discussion is not warranted. A silent unexplained vote to approve a list of preapproved candidates in public session gives the impression that the Board colluded to circumvent the OPMA's requirements.

A-5481-14T3

This court is bound to liberally construe the OPMA "to accomplish its purpose and the public policy of this State[.]" N.J.S.A. 10:4-21. Therefore, we hold that Rice notices must be provided in advance of any meeting at which a personnel decision may occur. This protocol provides the Board with the flexibility to discuss matters in executive session when necessary and affords the affected employees the opportunity to request that any proposed discussion occur publicly.

We recognize that requiring a Rice notice may not produce the type of decision-making process the Legislature envisioned when it adopted the OPMA. We are also mindful that the judiciary plays no role in selecting the makeup of public bodies. The judiciary, however, is entrusted with enforcing the OPMA, which requires public bodies to conduct the public's business in the light of day, "hence its unofficial moniker, 'the Sunshine Law.'" Opderbeck, supra, 442 N.J. Super. at 55.

IV

We now address the question of remedy. With respect to the release of the meeting minutes, the record shows the trial court previously gave the Board an opportunity to satisfy the "promptly available" requirement under N.J.S.A. 10:4-14 without imposing any sanctions. When the court's "suggestion" proved ineffective, the court imposed the permanent injunction we have

vacated here. Thus, fairness dictates that we impose some form of sanction. N.J.S.A. 10:4-16 authorizes the court to impose "such remedies as shall be necessary to insure compliance with the provisions of this act." We are satisfied that the following sanctions will promote the public policy of the OPMA without unduly interfering with the Board's managerial prerogatives.

This court orders the Board of Trustees of Kean University to adopt a meeting schedule for academic year 2017-2018 that will enable them to make its meeting minutes "promptly available" under N.J.S.A. 10:4-14. This meeting schedule shall enable the Board to formally consider, approve, and release the meeting minutes to the public within a timeframe of thirty to forty-five days of the last meeting, unless extraordinary circumstances prevent the Board from meeting. Extraordinary circumstances shall include, but are not limited to, extreme weather, public emergencies, and any other unforeseen events that would make gathering to meet unreasonable. This court does not retain jurisdiction to enforce this order. Any party aggrieved by the Board's failure to carry out this order will be required to file an action in lieu of prerogative writs in the Superior Court, Law Division, Civil Part pursuant to Rule 4:69-1. In the event of any future violations of the OPMA by the

Board, the trial court may consider the history of the Board's noncompliance in fashioning an appropriate remedy.

We declare the actions taken by the Board at the December 6, 2014 meeting regarding personnel matters null and void. Such relief is clearly authorized under N.J.S.A. 10:4-16. The public policy of transparency and accountability in the OPMA demand that we hold the Board accountable for failure to adhere to both the text and the values underlying the OPMA.

Affirmed in part and reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION