CURRIER, J.A.D.
*87 This appeal requires us to decide if draft minutes prepared for a public body's approval and adoption must be provided in response to a request under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. The Government Records Council (GRC or Council) denied the Libertarians For Transparent Government's OPRA request for unapproved minutes. The trial judge held the draft minutes were "deliberative material," and therefore exempt from OPRA's disclosure requirements. Because draft minutes are a preliminary document subject to revision, they remain "deliberative material" and exempt from the disclosure requirements of OPRA until approved by the public body. We affirm.
On April 4, 2016, plaintiff submitted a request to the GRC for a copy of its February 23, 2016 public meeting minutes. In its response on April 13, 2016, the GRC advised that its March 29, 2016 meeting was cancelled for lack of a quorum. Therefore, the Council had not reviewed and voted on the minutes, and they remained in draft form. Relying on N.J.S.A. 47:1A-1.1, the GRC stated that it considered records in draft form to be "exempt from disclosure as 'inter-agency or intra-agency advisory, consultative, or deliberative' ... material." The Council continued, advising that *88 "[o]nce the minutes are approved they become government records and must be disclosed. However, while they are still in draft form, they are considered exempt from public access under OPRA."
Several days later, plaintiff presented an Order to Show Cause (OTSC) and Verified Complaint asserting a violation of OPRA and the common law and requesting the production of the draft minutes. The trial judge signed the order on April 18, 2016, and ordered the GRC to appear on June 23 and show cause why an order should not be entered compelling it to comply with OPRA, provide the draft minutes, and pay plaintiff counsel fees. In early May, the GRC advised that it had approved the draft meeting minutes at its April 26, 2016 meeting and posted them on its website that day.
After oral argument, the judge rendered an oral decision on July 12, 2016. She found the draft minutes were pre-decisional because they were prepared for editing and approval. She also determined the draft minutes were advisory and deliberative, and, therefore, they were not a government record subject to disclosure under *330 OPRA. The following day, the judge issued a second oral decision, rejecting plaintiff's argument under common law for disclosure of the draft minutes. An order was entered on July 14, 2016, denying plaintiff's application.
On appeal, plaintiff argues that the draft minutes are not pre-decisional or deliberative solely because they are unapproved, and, even if portions of the minutes are exempt as privileged, the minutes should be produced with redactions.[1] Plaintiff also asserts that the GRC's failure to produce the draft minutes violated the mandate under the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-6 to -21, that minutes must be made "promptly available."[2]
*89 Our review of the trial judge's decision is plenary. A trial court's "determinations with respect to the applicability of OPRA are legal conclusions subject to de novo review." O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371, 379, 982 A.2d 459 (App. Div. 2009) ; see also Paff v. N.J. State Firemen's Ass'n, 431 N.J. Super. 278, 286, 69 A.3d 118 (App. Div. 2013).
OPRA's broad public policy favors public access to government records and serves to "maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process." Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 293, 166 A.3d 1140 (2017) (quoting Mason v. City of Hoboken, 196 N.J. 51, 64-65, 951 A.2d 1017 (2008) ). It is well established that, in enacting OPRA, the Legislature declared that "government records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest." N.J.S.A. 47:1A-1.
Under OPRA, a government record is "any paper, written or printed book, document, ... information stored or maintained electronically ... or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State." N.J.S.A. 47:1A-1.1. The statute expressly exempts, however, records that are "advisory, consultative, or deliberative material."[3] Ibid."This exemption has been construed to encompass the deliberative process privilege, which has its roots in the common law." Ciesla v. N.J. Dep't of Health & Sr. Servs., 429 N.J.Super. 127, 137, 57 A.3d 40 (App. Div. 2012).
The applicability of the deliberative process privilege is governed by a two-prong test. The judge must determine both that a document is (1) "pre-decisional," meaning it was "generated *90 before the adoption of an agency's policy or decision;" and (2) deliberative, in that it "contain[s] opinions, recommendations, or advice about agency policies." Educ. Law Ctr. v. Dep't of Educ., 198 N.J. 274, 286, 966 A.2d 1054 (2009) (quoting In re Liquidation of Integrity Ins. Co., 165 N.J. 75, 84-85, 754 A.2d 1177 (2000) ). If a document satisfies both prongs, it is exempt from disclosure under OPRA pursuant to the deliberative process privilege. See ibid.
The intent of the privilege is to prevent the " 'disclosure of proposed policies *331 before they have been fully vetted and adopted by a government agency,' thereby ensuring that an agency is not judged by a policy that was merely considered." Ciesla, 429 N.J. Super. at 137-38, 57 A.3d 40 (quoting Educ. Law Ctr., 198 N.J. at 286, 966 A.2d 1054 ). We further explained in Ciesla that the privilege serves to "avoid[ ] the confusion that could result from the release of information concerning matters that do not bear on an agency's chosen course." Id. at 138, 57 A.3d 40. The privilege permits the exclusion of documents reflecting "advisory opinions, recommendations, and deliberations comprising part of a process by which [its] decisions and policies are formulated." Id. at 137, 57 A.3d 40 (quoting Integrity, 165 N.J. at 83, 754 A.2d 1177 ).
Plaintiff argues that GRC's draft meeting minutes fail to satisfy either prong of the deliberate process privilege. We disagree. To satisfy the first prong, the agency must prove that the requested documents were used, or could be used, in the agency's decision-making process. Id. at 139-40, 57 A.3d 40. Even if the agency elects not to make a final decision, the privilege is not lost. Id. at 139, 57 A.3d 40.
A draft is not a final document. It has been prepared for another person or persons' editing and eventual approval. As we stated in Ciesla, "[b]y their very nature, draft documents are preliminary and subject to future revision. See Webster's II New College Dictionary 349 (3d ed. 2005) (defining a draft as a 'preliminary outline, plan, or version')." Id. at 140, 57 A.3d 40. Because these draft minutes remained subject to revision and recommendations, *91 and were not yet approved for public circulation, they were pre-decisional.
To satisfy the second prong, the document must be shown to be closely related to "the formulation or exercise of ... policy-oriented judgment or [to] the process by which policy is formulated." Id. at 138, 57 A.3d 40 (quoting McGee v. Twp. of E. Amwell, 416 N.J. Super. 602, 619-20, 7 A.3d 785 (App. Div. 2010) ). Plaintiff contends that the subject minutes are not deliberative because they are a summary of what occurred at a public meeting and, therefore, the intent to protect deliberative material described in Ciesla is unnecessary here because of the dissimilarity of these minutes from the draft governmental staff report sought in that case. We disagree.
Although large portions of the final approved minutes here mirror the agenda published by the GRC prior to the meeting, there are additions and changes. As with any preliminary document, the draft minutes provided to the members of the public agency are a recommendation of their writer, prepared with his or her view and recollection as to what transpired at the meeting. The recommendation must await action by the public body. The members who attended the meeting may make additions, deletions, and suggestions, with which the other members may or may not agree, leading to further revisions. As we explained in Ciesla, "[t]entative findings and recommendations ... may be reconsidered, qualified, supplemented, withdrawn, and even, in some instances, radically changed to reflect entirely opposite conclusions." Id. at 140, 57 A.3d 40. The draft status of the document "is a critical facet of the analysis." Ibid.
In O'Shea v. West Milford Board of Education, 391 N.J. Super. 534, 536-37, 918 A.2d 735 (App. Div. 2007), we considered whether the notes taken during a meeting by a board of education secretary constituted government records under OPRA. We determined that the handwritten notes were not government records subject to disclosure under OPRA because the notes were only taken to be used as an aid in preparing the meeting minutes. See id="p92" href="#p92" data-label="92" data-citation-index="1" class="page-label">*92id. at 538-39, 918 A.2d 735. Labeling a secretary's notes as public records would *332 "defeat the [b]oard's right to approve its minutes." Id. at 541, 918 A.2d 735 ; see also Atl. City Convention Ctr. Auth. v. S. Jersey Publ. Co., 135 N.J. 53, 63, 637 A.2d 1261 (1994) (noting that a "secretary's transcribed notes, approved by the body, not the notes themselves, would constitute the official record").
We cannot conclude, as plaintiff urges, that because these minutes, as approved, appear to have only minor changes from the published agenda, they have lost the protection of the deliberate process privilege. Like all draft documents, they remained subject to qualification and supplementation. It is not until an agency's members approve the minutes that they become public record. See N.J.S.A. 10:4-14 (providing, in pertinent part, that a "public body shall keep reasonably comprehensible minutes of all its meetings showing the time and place, the members present, the subjects considered, the actions taken, the vote of each member, and any other [required] information ... which shall be promptly available to the public"). Draft minutes carry no import.
We are mindful that under OPRA "any limitations on the right of access ... shall be construed in favor of the public's right of access." Gilleran v. Twp. of Bloomfield, 227 N.J. 159, 185, 149 A.3d 800 (2016) (quoting N.J.S.A. 47:1A-1 ). However, the inherent nature of a draft document as both advisory and requiring deliberation prior to approval, compels the conclusion that draft minutes are "advisory, consultative, deliberative material," and are not subject to disclosure under OPRA as a government record. See N.J.S.A. 47:1A-1.1.
Since draft minutes are not government records subject to disclosure under OPRA, there can be no requirement for their production in a redacted form. Plaintiff relies on N.J.S.A. 47:1A-5(g) in support of its argument that the draft minutes can be produced with redactions. That provision permits a custodian of a government record to delete a portion of a record it deems to be exempt from public access and produce the remainder of the record. N.J.S.A. 47:1A-5(g). In keeping with our reasoning set *93 forth above, that section of the statute cannot apply to draft minutes. We have deemed the drafts to be advisory, deliberative, and a recommendation subject to revision. Therefore, the entire document is privileged and exempt until approved by the public body. To produce an entire document redacted would be illogical and serve no purpose.
Although plaintiff did not assert a violation of OPMA in its Verified Complaint, and agreed with the trial judge it was not raising a contravention of that Act, it now argues before us that the GRC did not make its minutes "promptly available" as required under N.J.S.A. 10:4-14. Because plaintiff received the approved minutes shortly after filing its OTSC, compliance with OPMA was not at issue; the trial court was only asked to address whether the draft minutes were subject to OPRA disclosure. We therefore have also only considered the applicability of OPRA to these unapproved minutes.
We note, however, the consistency of our determination today with our recent decision in Kean Federation of Teachers v. Morell, 448 N.J. Super. 520, 531, 154 A.3d 199 (App. Div. 2017),[4] in which we did address the "promptly available" requirement under OPMA. In Morell, we held that public bodies must "approve and make their meeting minutes available to the public in a manner that fulfills the *333 Legislature's commitment to transparency in public affairs." Ibid. In considering the Legislature's intent behind a public agency's OPMA obligation to make their meeting minutes "promptly available," we were discussing the timeliness of releasing approved minutes. Id. at 524, 154 A.3d 199. We noted the Legislature's "fact-sensitive standard" in its use of the wording "promptly available" rather than setting a definitive timeframe, and recognized the need to balance respect for the "prerogatives of independent public bodies" with "the public policy codified in OPMA." Id. at 535, 154 A.3d 199. *94 We have respected those same principles in our decision today. The public entity retains its privilege of reviewing, editing, and approving its draft minutes prior to their release. It must perform this function, however, in a timely manner to satisfy OPMA's "promptly available" requirement. As a result, the public entity remains consistent with fundamental principles of municipal law and compliant with OPRA and OPMA.
Affirmed.

Plaintiff does not renew its argument made before the trial court that the minutes are subject to disclosure under common law principles.

Plaintiff did not claim a violation of OPMA in its Verified Complaint.

The GRC did not dispute that the draft minutes were government records; it asserts only that the minutes are exempt from disclosure under the deliberative process privilege.

A petition for certification, filed by defendants the Board of Trustees of Kean University and Kean University, is currently pending.