JUSTICE LaVECCHIA delivered the opinion of the Court.
*156 **570 With the enactment of the Open Public Meetings Act (the OPMA or the Act), L. 1975, c. 231 (codified at N.J.S.A. 10:4-6 to -21), the Legislature established procedures governing the conduct of meetings of public bodies. The Act makes explicit the legislative intent to ensure the public's right to be present at public meetings and to witness government in action. N.J.S.A. 10:4-7. That legislative intent is balanced by an express recognition that public bodies must be allowed to exercise discretion in determining how to perform their tasks, see N.J.S.A. 10:4-12(a), and whether to engage in private discussion and voting under certain identified circumstances, N.J.S.A. 10:4-12(b).
In this appeal, we consider whether the Appellate Division erred in its application of the OPMA and relevant interpretive case law to a specific public institution of higher education, thereby burdening that entity and, by implication, other public bodies in the exercise of their discretion in how to conduct their meetings.
**571 For the reasons that follow, we reverse the Appellate Division's judgment as to notice requirements under the OPMA, and we affirm the judgment as to the Board's failure to make minutes promptly available but modify the remedy the panel imposed for that failure.
I.
Before reciting the details of the dispute that generated this appeal, it is helpful to review the OPMA's basic provisions as well as a key case on which the parties base their clashing views of the Act's requirements.
A.
The OPMA establishes requirements for notice of meetings, N.J.S.A. 10:4-9, publication of an annual schedule of regular meetings, N.J.S.A. 10:4-18, and the keeping and public release of minutes, N.J.S.A. 10:4-14, as well as definitions of basic concepts of "public business" and "adequate notice," N.J.S.A. 10:4-8(c), (d). The requirements are generic even though the definition of "public body" encompasses various types of public institutions of diverse membership size, obligations, meeting needs, and other practicalities. See N.J.S.A. 10:4-8(a).
The Act's declared goal is to ensure "the right of the public to be present for all meetings of public bodies, and to witness in full detail all phases of the deliberation, policy formulation, and decision making of public bodies." N.J.S.A. 10:4-7. As a general rule, no meeting may occur without adherence to the Act's requirements as to adequacy of notice to the public. N.J.S.A. 10:4-9.
Except as identified, the OPMA requires the meetings of public bodies to be conducted in open session and in view of the public. N.J.S.A. 10:4-12(a). That said, public bodies are given discretion in how to conduct their meetings. Ibid. ("Nothing in this act shall be construed to limit the discretion of a public body to permit, prohibit, or regulate the active participation of the public at any **572 meeting, except that" municipal governing bodies and local boards of education are required to set *157 aside time for public comment). The same section acknowledges circumstances under which a public body may enter into a closed session, for example, to address matters required by federal or state law to be confidential; matters of individual privacy; matters pertaining to collective bargaining or the purchase, lease, or acquisition of real property; and pending or anticipated litigation or contract negotiation in which the public body is, or may become, a party. N.J.S.A. 10:4-12(b). In relevant part for purposes of this appeal, the Act provides:
A public body may exclude the public only from that portion of a meeting at which the public body discusses any:
....
matter involving the employment, appointment, [or] termination of employment ... of any specific prospective public officer or employee or current public officer or employee employed or appointed by the public body, unless all the individual employees or appointees whose rights could be adversely affected request in writing that the matter or matters be discussed at a public meeting....
[ N.J.S.A. 10:4-12(b)(8).]
That exception concerning personnel matters is a focal point of this appeal.
B.
Notably, pursuant to N.J.S.A. 10:4-12(b)(8), employees whose employment interests could be adversely affected have the right to waive the protection of having their matter discussed in closed session. The subsection provides for such individuals to choose that the public body have the discussion in public. Ibid.
The ability to make that request is of little import, however, if affected employees are not aware that their employment may be discussed at a future meeting-an issue addressed soon after the OPMA's adoption by the Appellate Division in Rice v. Union County Regional High School Board of Education, 155 N.J. Super. 64, 73, 382 A.2d 386 (App. Div. 1977).
**573 In that case, the Appellate Division considered whether a school board violated N.J.S.A. 10:4-12(b)(8) by entering into closed session and discussing whether to reduce staff by terminating seventeen school employees at the end of the school year for budgetary purposes. Id. at 68-69, 382 A.2d 386. The employees were not given advance notice that their termination would be discussed in a closed session. See id. at 73-74, 382 A.2d 386.
In finding the board's failure of notice violative of the OPMA, the Rice appellate panel noted that the OPMA provides affected employees with the right "to have a public discussion of his or her personnel matter." Id. at 72, 382 A.2d 386. Tying the personnel exception of N.J.S.A. 10:4-12(b)(8) to the employees' privacy interests, the panel stated that the right to compel public action on the personnel topic would be rendered "useless and inoperative" if affected personnel are not given some form of notice that action affecting their employment status is on the agenda. Ibid. Continuing, the panel stated:
The plain implication of the personnel exception to the [OPMA] is that if all employees whose rights could be adversely affected decide to request a public hearing, they can only exercise that statutory right and request a public hearing if they have reasonable advance notice so as to enable them to (1) make a decision on whether they desire a public discussion and (2) prepare and present an appropriate request in writing.
[ Id. at 73, 382 A.2d 386.]
The panel held that employees must be given "reasonable notice" when a public *158 entity intends to consider taking adverse employment action related to them. Id. at 74, 382 A.2d 386. The details of that notice, as described above, have become commonly known as a Rice notice.
C.
Finally, also at issue in this appeal is the timeliness of the release of the minutes from meetings. The OPMA requires public bodies to make their meeting minutes "promptly available to the public to the extent that making such matters public shall not be inconsistent with [ N.J.S.A. 10:4-12 ]." N.J.S.A. 10:4-14. The Act **574 does not define what it means to make meeting minutes "promptly available." See N.J.S.A. 10:4-8 (providing definitions for OPMA terms).
II.
A.
The matter before us is one of a number of proceedings concerning certain public meetings of a New Jersey higher-education institution. There is no dispute as to the salient facts. The parties' disagreement is over the OPMA's requirements under the circumstances that occurred here. Specifically at issue are (1) the extent of the public body's notice obligations under the OPMA and whether the Rice notice for the personnel exception applied; (2) timing parameters for the release of minutes of meetings; and (3) the appropriate remedy if the OPMA was violated in the latter respect in this matter. We draw the facts from the record created in the Law Division.
Kean University (Kean) is a public institution of higher education operating campuses in Union and Ocean Counties. As a public university, Kean's Board of Trustees (the Board) has statutory authority, pursuant to N.J.S.A. 18A:64-6, to direct and control Kean's general operations, curriculum, and policy. The Board is required to "meet and organize annually at a regular meeting held during the second week of September, by the election of a chairman, vice chairman and such other officers as the board shall determine." N.J.S.A. 18A:64-4.
Aside from that mandatory annual meeting, "[t]he board may meet at such other times and at such places as it may designate." Ibid. The OPMA requires the Board, as a public body, to annually establish, post, and otherwise publish a schedule of its regular meetings. See N.J.S.A. 10:4-18. The schedule can be revised and republished thereafter. Ibid.
Over the last several years, the Board's policy has been to hold five regularly scheduled meetings each year. Thus, for the 2014-15 **575 academic year the Board held meetings on September 15, 2014; December 6, 2014; March 2, 2015; May 11, 2015; and June 29, 2015. Further, it is the Board's practice to approve a prior session's minutes at the next scheduled meeting. Consistent with that, the minutes for the September 15, 2014 meeting, for example, were approved at the December 6, 2014 meeting.
One of the Board's duties is to vote on the reappointment or non-appointment of faculty members. That procedure occurs in accordance with a set protocol. As described in sworn statements provided to the Law Division, faculty applicants whose appointments are expiring and who must be reappointed to continue on the faculty are considered first by the President of the University, who is the academic head of the institution. The President then provides a recommendation to the Board about whether to reappoint each individual. Prior to notifying the Board about a recommendation either for or against reappointment, the President notifies each *159 affected faculty member regarding the recommendation and the date of the Board meeting at which the Board will consider the nominations for reappointment.[1] Before the Board holds its meeting at which the reappointment of faculty will be on the agenda for action, a Board subcommittee-known as the Academic Policy and Programs Committee-reviews the President's recommendations and then provides its own recommendation to the Board in the form of a personnel report entitled "Faculty Reappointments and Faculty Non-Reappointments."
B.
Prior to the commencement of this action, the Kean Federation of Teachers (the KFT)-a union representing the Kean faculty-and two individual professors sued the Board. The complaint alleged that the Board violated the OPMA by failing to make **576 "promptly available," pursuant to N.J.S.A. 10:4-14, minutes from a December 7, 2013 meeting at which the Board voted not to reappoint the two professors. The complaint also alleged that the Board was required to and failed to issue Rice notices to the individual professors in advance of closed session discussions followed by a public vote at that meeting.
The Law Division issued an opinion, dated June 17, 2014, holding that the Board's failure to issue Rice notices to affected faculty violated the OPMA. However, the court declined, under the circumstances, to void the Board's action. The court issued a second opinion on September 18, 2014, holding that the Board had failed to meet the "promptly available" requirement of N.J.S.A. 10:4-14 with respect to the release of minutes from the closed session of the Board. The court "suggest[ed]" a guideline of between thirty to forty-five days for release of minutes, indicating that the "promptly available" requirement would be satisfied if the Board made the minutes available within that timeframe.
Those two Law Division decisions are backdrop to the present matter.
C.
On November 14, 2014, plaintiff Valera Hascup, an untenured Assistant Professor of Nursing employed by Kean since 2011, received a letter from the University President informing her that he would not nominate her for reappointment at the Board's meeting scheduled for December 6, 2014. Before that meeting occurred, counsel for the KFT wrote to the Board's attorney. The letter set forth the KFT's position that, to comply with the Law Division's June 2014 order, the Board should send Rice notices at least two weeks before the December 6 meeting to faculty affected by the reappointment decisions to be made by the Board at that meeting. On November 29, 2014, the Board published a tentative agenda for the December meeting on the Kean University website, indicating that the Board intended to discuss faculty reappointments during the public meeting. Specifically, the agenda **577 listed the Subcommittee's report on the President's recommendations on faculty retention among the items to be discussed in public session. The Board also issued a campus announcement regarding the meeting, as well as an e-mail to impacted groups. It did not send a Rice notice to Hascup or to the other affected faculty members.
The Board held its December 6, 2014 meeting as scheduled. The Board voted in public session to accept the President's recommendations-reviewed by the Subcommittee -as *160 to the reappointment and non-reappointment of faculty members, including the President's recommendation against the reappointment of Hascup.
At that meeting, the Board also approved the minutes of its prior meeting held on September 15, 2014. Minutes from both the public and closed sessions were approved, but the closed session minutes were to be redacted by legal counsel.
On December 18, 2014, co-plaintiff James Castiglione, a Kean professor and President of the KFT, filed an Open Public Records Act (OPRA)[2] request seeking the minutes from the closed sessions of the September 15 and December 6, 2014 meetings. Audrey Kelly, the Board's Executive Director who was responsible for OPRA requests, was on leave until mid-January and did not learn of the request until her return. Apparently, in her absence, no one assumed responsibility for her duties with respect to that OPRA request.
The minutes for the closed session from the September 15 meeting were made available on February 2, 2015. With regard to the December meeting minutes, the record reveals that Kelly acknowledged she was aware of the prior trial court decision that recommended release of minutes from closed sessions of the Board within forty-five days. She believed she could not comply with that timeframe because the Board must approve the minutes before they can be released, which requires a formal public **578 meeting conducted in conformity with the OPMA. Kelly concluded, with the advice of Board counsel, that she therefore could not release the minutes for the December 6, 2014 meeting prior to the Board's next scheduled meeting on March 2, 2015. Accordingly, the minutes for the December 6 meeting were approved at the March 2 meeting and were released on March 4, 2015.
D.
The KFT, Castiglione, and Hascup filed the instant complaint in lieu of prerogative writs in the Law Division on February 11, 2015, naming as defendants Kean, the Board, and Board Chairperson Ada Morell. The complaint alleged that defendants violated the OPMA by failing to issue Rice notices prior to the December 6, 2014 meeting and by failing to make the Board's minutes for the September 15 and December 6, 2014 meetings "promptly available" to the public.
The matter proceeded on cross-motions for summary judgment. In an opinion dated May 21, 2015, the trial court granted partial summary judgment to each party. On the notice issue, the court held that the Board was not required to issue Rice notices prior to the December meeting because the personnel actions occurred during the public session. The court explained that Rice provides an employee the right to advance notice and to demand a public discussion of matters relating to that employee and, thus, is implicated "[o]nly when a public entity intends to exclude the public and discuss in executive session a personnel matter."
On the timing of the release of the minutes from the September 2014 and December 2014 meetings, the court relied on Matawan Regional Teachers Ass'n v. Matawan-Aberdeen Regional Board of Education, 212 N.J. Super. 328, 514 A.2d 1361 (Law Div. 1986), to hold that the Board had violated the "promptly available" requirement of N.J.S.A. 10:4-14. The court also noted that defendants had disregarded its prior order regarding prompt release of minutes. The court issued a permanent *161 injunction requiring the **579 Board to make the minutes of all future meetings available to the public within forty-five days.
Defendants appealed the order establishing the forty-five day deadline for issuance of the minutes. Plaintiffs filed a cross-appeal challenging the trial court's determination on the issue of Rice notice.
In a published opinion, the Appellate Division affirmed the determination that the Board did not make the meeting minutes promptly available, but reversed and vacated the permanent injunction requiring release of minutes from all future sessions of the Board within forty-five days of each meeting. Kean Fed'n of Teachers v. Morell, 448 N.J. Super. 520, 526, 154 A.3d 199 (App. Div. 2017). The panel also reversed the trial court's holding that no Rice violation had occurred. Id. at 527, 154 A.3d 199.
With regard to the release of meeting minutes, the panel declined to adopt the analysis from Matawan Regional and instead relied on "well-settled principles of statutory construction" to interpret the Legislature's intent concerning the "promptly available" requirement. Id. at 531, 154 A.3d 199. To the panel, "[t]he words 'promptly available' in N.J.S.A. 10:4-14 require public bodies to approve and make their meeting minutes available to the public in a manner that fulfills the Legislature's commitment to transparency in public affairs." Ibid. The panel thus interpreted that language as requiring a public body to make it "a priority" to issue its minutes, and to develop a protocol to achieve that goal. Ibid. If the only way to make minutes "promptly available" would be "to meet ten times per year," then, the panel concluded, the public body would be obliged to do so. Id. at 533, 154 A.3d 199.
That said, the panel viewed a permanent injunction with a set timeframe for release of minutes to be problematic. The panel found that the injunction "undermines the Board's autonomy by usurping a quintessential managerial prerogative" and "is managerially, logistically, and legally unsound because it leaves the door ajar to permanent judicial entanglement." Id. at 535, 154 A.3d 199. Noting that courts "are ill suited to micromanage the internal **580 affairs" of a public body that the Legislature entrusted with managing a public university, the panel nonetheless viewed five meetings per year as inadequate to comply with the "promptly available" requirement for minutes' release and "urge[d]" the Board to "seriously consider" increasing the frequency of its meetings. Ibid.
With respect to a remedy for the OPMA violation found to have occurred here, taking into consideration the underlying circumstances the panel ordered the Board to adopt a meeting schedule for the 2017-18 academic year that would promote the release of meeting minutes within thirty to forty-five days of the last meeting, except in "extraordinary circumstances." Id. at 545, 154 A.3d 199.
Turning to the Rice issue, the panel expressed the view that the Board was utilizing the subcommittee process to avoid sending Rice notices, which, the panel concluded, violated the policy of public participation advanced by the OPMA. Id. at 540, 154 A.3d 199. According to the panel, "a public body is required to send out a Rice notice any time it has placed on its agenda any matters" that involve employment, termination, discipline, or any other items described in N.J.S.A. 10:4-12(b)(8). Id. at 543, 154 A.3d 199. Thus, the panel held that Rice notices are required "in advance of any meeting at which a personnel decision may occur." Id. at 544, 154 A.3d 199. The panel declared void all personnel-related actions taken by the Board at the *162 December 6 meeting. Id. at 546, 154 A.3d 199 (citing N.J.S.A. 10:4-16 ).
We granted defendants' petition for certification. 230 N.J. 524, 170 A.3d 313 (2017). In addition, numerous parties were granted amicus status.
Rutgers, the State University of New Jersey (Rutgers); the New Jersey Council of County Colleges (NJCCC); the State-Operated School District of the City of Camden and the Trenton Board of Education (the School Districts); the New Jersey State League of Municipalities and the New Jersey Institute of Local Government Attorneys (the League); the New Jersey School **581 Boards Association (NJSBA); and the New Jersey Association of School Administrators (NJASA), filed briefs supportive of defendants.
The American Civil Liberties Union of New Jersey (ACLU-NJ); the Council of New Jersey State College Locals, AFT, AFL-CIO (the Council); the New Jersey Education Association (NJEA); and Libertarians for Transparent Government (LTG), filed briefs in support of plaintiffs.
III.
A.
Defendants argue that the Appellate Division incorrectly expanded the reach of Rice and N.J.S.A. 10:4-12(b)(8) to encompass all discussions regarding personnel matters, which places a heavy burden on public bodies and renders the notice requirement effectively useless in light of the large volume of notices that personnel will receive. According to defendants, Rice's holding was narrow and designed to effectuate notice only to personnel who will be negatively impacted by discussions or actions conducted in a closed session, giving such personnel the opportunity to demand that the discussion take place in public. Defendants argue that the Appellate Division's holding expands the rule beyond its intended purpose, applying it to cases in which personnel are not adversely affected and where the meeting takes place in public.
Defendants further contend that nothing in Rice or the OPMA provides employees the right to demand a robust discussion on an employment issue and that the Appellate Division holding will effectively require detailed discussions of perfunctory employment decisions. Consequently, public bodies will be forced to deliberate on employment decisions as a whole body rather than delegate that authority to a committee.
Regarding whether meeting minutes were made promptly available and the appropriate remedy if they were not, defendants argue that the Appellate Division's holding inappropriately and **582 arbitrarily requires them effectively to double the frequency of their board meetings for the sole purpose of approving minutes of previous meetings. According to defendants, that holding will create a logistical hardship and inappropriately interferes with the discretion that the Legislature gave to the Board, as a public body, to determine the most advantageous and efficacious manner of proceeding with its business. Moreover, defendants argue that the Appellate Division pointed to nothing in either the OPMA or the established case law on which it based the thirty-to-forty-five day timeline.
B.
In response, plaintiffs assert that personnel have a right to determine whether discussions or actions pertaining to their employment should take place in an open or closed session. According to plaintiffs, employees must be given notice of pending action or discussion concerning their employment *163 status in order to decide for themselves whether they want the meeting to proceed in a closed or open session. The entire purpose of the notice requirement, plaintiffs argue, is to give employees the power to demand a public discussion or to agree that any discussion regarding their employment take place behind closed doors. Plaintiffs contend that the OPMA intended to protect employees' privacy rights and that the Appellate Division did no more than allow the affected employees an opportunity to exercise those rights here.
On the availability of meeting minutes, plaintiffs contend that the Appellate Division properly emphasized public disclosure by requiring that meeting minutes be available within forty-five days. Plaintiffs note that under defendants' release timeline, as practiced here, minutes of prior meetings were not available to the public for review and inspection until after the next meeting, which forced interested parties to wait up to five months (September to February) to address issues taken up by the Board in closed session.
**583 Plaintiffs argue that the desire to protect board members from inconvenience is not a consideration sufficient to outweigh the public's interest in transparency, and that courts have regularly held that prompt disclosure must be prioritized over administrative convenience. Plaintiffs further contend that imposing a deadline to disclose meeting minutes is a permissible remedy under the OPMA. Lastly, plaintiffs fault defendants for not utilizing technology to facilitate the process of making meeting minutes available in a more timely fashion.
IV.
A.
This appeal comes before us on a record created through cross-motions for summary judgment. The essential facts are undisputed and the issues we face concern questions of law. We review such questions de novo. Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386, 143 A.3d 254 (2016).
Specifically, we are addressing conflicting views as to a statute's requirements. See Cashin v. Bello, 223 N.J. 328, 335, 123 A.3d 1042 (2015) (noting that appellate courts apply de novo standard in construing statutory language). When we interpret a statute, our goal is to "ascertain and effectuate the Legislature's intent." Ibid. To do that, we look first to the statute's actual language and ascribe to its words their ordinary meaning. Mason v. City of Hoboken, 196 N.J. 51, 68, 951 A.2d 1017 (2008) (citing DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) ). Where the statutory language is ambiguous, we may consider extrinsic materials such as legislative history, committee reports, and other relevant sources. Cashin, 223 N.J. at 335-36, 123 A.3d 1042 (relying on State v. Fleischman, 189 N.J. 539, 548, 917 A.2d 722 (2007) ). Those principles of statutory construction guide us in this matter.
**584 B.
We begin with the failure to give Rice notices in the case before us. The trial court concluded that such notices were not required, relying on the express language of the OPMA. The Appellate Division concluded the opposite, based on its view of the OPMA's aim and how that aim was advanced through Rice.
We look first to the OPMA. If its language is clear and unambiguous, revealing the Legislature's intent, our interpretative task is concluded. Mason, 196 N.J. at 68, 951 A.2d 1017 (stating that courts "need *164 look no further" where meaning of statutory words is "clear"). Our duty is to enforce the words of the Legislature.
The relevant OPMA section uses plain language to express what a public body may do with respect to conducting closed sessions. N.J.S.A. 10:4-12(b) clearly permits the public body to determine to enter into closed session for any one of the identified circumstances approved by the Legislature. That section of the Act states that "[a] public body may exclude the public only from that portion of a meeting at which the public body discusses any" of the enumerated topics. N.J.S.A. 10:4-12(b) (emphasis added). The choice is that of the public body. It determines whether to have the private discussion of the listed topics, as evidenced by the Legislature's use of the word "may." The Board and many of the amici correctly emphasize that point.
The so-called "personnel exception" also has specific language that cannot be ignored or treated as surplusage. See In re Attorney Gen.'s "Directive on Exit Polling: Media & Non-Partisan Pub. Interest Grps.", 200 N.J. 283, 297-98, 981 A.2d 64 (2009) ("We must presume that every word in a statute has meaning and is not mere surplusage, and therefore we must give those words effect and not render them a nullity."). Although N.J.S.A. 10:4-12(b)(8) adds personnel matters to the enumerated topics that a governing body may consider privately, it also authorizes an exception to that personnel exception-when "all individual employees ... whose rights could be adversely affected request in **585 writing that the matter or matters be discussed at a public meeting," the governing body may not opt to shut its doors. (emphasis added).
Two principles thus emerge from the legislative language: the public entity may elect to discuss a topic listed in subsection (b) in closed session, and the choice to have that discussion in private may be overridden if all employees whose rights could be adversely affected request in writing that the discussion occur at a public session.
The Appellate Division decision in Rice dealt with a factual setting that squarely fit within both of those principles. The public body had determined to proceed with its position reduction and employee termination plan in closed session, and the individual employees whose rights were adversely affected never had the opportunity to exercise the right under N.J.S.A. 10:4-12(b) to request in writing that the discussion occur in public session. Rice thus developed a procedural requirement designed to promote the opportunity for adversely affected individuals to exercise the specific right that the Legislature conferred on them.
Defendants and amici curiae Rutgers, NJCCC, the School Districts, the League, NJSBA, and NJASA describe the Appellate Division's holding in this case as expanding the Rice notice requirement by mandating a Rice notice even when the matter is intended to be discussed in public, as opposed to in closed session, and even when the public entity's actions do not "adversely affect" an employee's rights. Relatedly, they argue that the Appellate Division's decision invades as well as burdens the discretion granted to public entities to conduct their meetings efficiently and without unwarranted interference.
Plaintiffs and the amici supporting them acknowledge that the holding under review is an expansion of Rice. However, they perceive that expansion as furthering the animating principle of the OPMA.
**586 We find that the procedural notice created in Rice should not be stretched beyond its factual setting. To do so would result in adding to the OPMA requirements that the Legislature did not impose.
*165 Moreover, it would risk throwing off the careful balance that the Legislature struck between a public body's need to control its own proceedings and at the same time determine when and how to protect confidential interests of the public body or others.
Neither N.J.S.A. 10:4-12(b)(8) nor Rice supports the interpretation that notice must be given to all potentially affected employees, regardless of whether the employee is adversely affected, whenever a personnel matter appears on a governing body's public meeting agenda. First, N.J.S.A. 10:4-12(b)(8) applies only to adversely affected employees. Second, it speaks only to an employee's right to make a private discussion public. The Appellate Division's extension of Rice as applied here is not logical in light of the express language of N.J.S.A. 10:4-12(b)(8), and it intrudes upon the discretion recognized for the Board in the legislative language. See McGovern v. Rutgers, 211 N.J. 94, 111, 47 A.3d 724 (2012) (declining, in context of OPMA, "to impose a greater burden on public bodies than what the Legislature has required").
The statute does not provide employees with a right to "select the forum of the discussion," as has been argued to us. Rather, it provides employees with the right to move a private discussion into the sunshine of a public discussion. The personnel exception's language is not applicable when a public entity already intends to take public action on a personnel matter implicating employees whose rights could be adversely affected by that action. Requiring Rice notices to employees when a public discussion is already planned so that the employees, if all agreed, could, in turn, insist that the discussion be public, at once defies logic and, as pointed out by amici supporting the Board, imposes a greater burden on public entities than the Legislature envisioned under N.J.S.A. 10:4-12(b)(8).
**587 We note that the purpose underlying the original requirement of a Rice notice is not advanced when a public body votes on a summary resolution of personnel matters in a public session. That conclusion is not undermined by a public body's use of a subcommittee of the whole to examine a topic in advance of a public meeting. As pointed out by the League as amicus, public bodies routinely approve recommendations in public meetings without discussion and must rely on advice from professional staff to make decisions. A public body's use of the subcommittee process is common and is not fairly viewed as an inherent subterfuge to eschew public discussion. Nor is there evidence in this case to support a finding that the desire to avoid sending Rice notices motivated the Board to act on the advice of its subcommittee to adopt the recommendations of the University President. The record before us simply does not support the arguments of plaintiffs and amici curiae the ACLU-NJ, the Council, and the NJEA that the Board purposefully avoided compliance with the OPMA and Rice by undergoing a pro forma process that attempted to technically comply with the law while blatantly violating its spirit.[3]
Forcing public bodies to issue Rice notices and robustly discuss all personnel matters, as the Appellate Division intimated, would intrude on a public body's prerogative as to how to conduct its meetings. The Appellate Division's holding on the Rice requirement takes that salutary notice procedure out of its context and places *166 on public bodies an intrusive, expansive, and confusing notice requirement that extends beyond the plain language of the right of employees under N.J.S.A. 10:4-12(b)(8). See DiProspero, 183 N.J. at 492, 874 A.2d 1039 ("It is not the function of this Court to 'rewrite a plainly-written enactment of the Legislature [ ]or presume that the Legislature intended something other than that expressed by way of the plain language.' " (alteration in original) (quoting **588 O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002) ) ).
The OPMA does not contain a requirement about the robustness of the discussion that must take place on a topic. Here, members of the public were able to witness the Board's public vote on faculty reappointments and thus have a base of information on which they can express views to the Legislature and others responsible for appointments to the Board regarding the adequacy, or inadequacy, of the discussion of Board business. But the robustness of a debate on a particular item discussed in public session is not a topic addressed in the OPMA. It is beyond the existing requirements of the OPMA. If a discussion of a certain length or quality is to be mandated, the OPMA requires amendment by the Legislature, not by the courts.
C.
Here, Hascup, as an affected employee, knew that the University President was not recommending her for reappointment and knew that the President's recommendation would go before the Board at the December 6 meeting. She had no right to demand a closed session under the OPMA personnel exception. She had the right only, if all other affected employees agreed, to demand a public setting for discussion. She received a public setting for the discussion and vote on the recommendations about reappointment. It may not have been much of a discussion, but it was done in public view, as was the vote. There is no Rice obligation in that setting unless we were to read the opening language of N.J.S.A. 10:4-12(b) that says "may" to mean "must," triggering all personnel actions to be presumptively and mandatorily private unless all affected employees request that the public body hold its discussion in public. We cannot rewrite a clearly written statute to achieve that for plaintiffs. See DiProspero, 183 N.J. at 492, 874 A.2d 1039.
We hold that the Appellate Division erred in reversing the trial court's judgment on this issue. There is no obligation to send Rice notices in a setting such as the one presented here, where the **589 Board determined from the start to conduct its discussion about faculty reappointments in public session. Accordingly, we also reverse the voiding of the personnel actions taken by the Board at its December 6, 2014 meeting.
We add only that once a public entity has committed to a public discussion on a topic tangential to the personnel exception, if a Board member sought during that public session to raise questions or provoke a discussion that implicated a need to adjourn to private session, then the discussion would have to halt. The Rice notice practice would have to be employed for the employees whose rights could be adversely affected. We express no opinion on whether any or all questions about reappointment would implicate either a privacy concern under N.J.S.A. 10:4-12(b)(3) or a risk of litigation for the Board over reputational harm to the employee.
V.
A.
Turning to the release of meeting minutes, the OPMA requires that public bodies *167 make their meeting minutes "promptly available to the public to the extent that making such matters public shall not be inconsistent with [ N.J.S.A. 10:4-12 ]." N.J.S.A. 10:4-14. There is no definition of the term "promptly available" in the Act. See N.J.S.A. 10:4-8.
The only published decision to provide a thorough consideration of the question is a Law Division decision from 1986, Matawan Regional Teachers Ass'n v. Matawan-Aberdeen Regional Board of Education, 212 N.J. Super. 328, 514 A.2d 1361. In that case, a local teachers' association asserted that the Matawan-Aberdeen Board of Education failed to make minutes of certain meetings "promptly available to the public." Id. at 329, 514 A.2d 1361. Endeavoring to ascertain the proper interpretation of "promptly" under the OPMA, the court looked to an ordinary definition of "prompt," but found the definition ill-suited for purposes of the OPMA. See **590 id. at 331, 514 A.2d 1361. Instead, the court adopted a fact-sensitive approach, identifying the following factors as relevant in the court's consideration of the matter at hand:
1. Prior experience in the publication of board minutes.
2. The subject matter of the minutes and its importance to the association and others directly affected by board action.
3. The subject matter of the minutes and its importance to the public, in general.
4. The intervals at which regular meetings were scheduled.
5. Whether meetings complained of were regularly scheduled or were, because of some exigency, held so close together that the board could not reasonably be expected to abide by the act's requirement.
[ Id. at 333, 514 A.2d 1361.]
Our Court has not specifically addressed the meaning of the "promptly available" requirement; however, we have made clear that when a public body meets in closed session, minutes from that session are still subject to the promptly available requirement. S. Jersey Publ'g Co. v. Expressway Auth., 124 N.J. 478, 493-95, 591 A.2d 921 (1991). Even so, a public entity is permitted to take steps to modify the disclosure where personal privacy interests are implicated, "provided the public interest is not subverted." Id. at 494, 591 A.2d 921. The release of closed session minutes must balance the interests of personal privacy and the public's right to information:
[I]f a public body legitimately conducts a meeting in closed session under any of the exceptions enumerated in N.J.S.A. 10:4-12(b), it nevertheless must make the minutes of that meeting "promptly available to the public" unless full disclosure would subvert the purpose of the particular exception. If disclosure would subvert the purpose of an exception, then the subversion must be balanced against the applicant's interest in disclosure.
[ Payton v. Tpk. Auth., 148 N.J. 524, 556-57, 691 A.2d 321 (1997).]
Thus, although we have made clear that minutes from a closed session meeting must be made "promptly available," because closed session meetings involve matters that generally are of a sensitive nature, the development of releasable minutes of closed sessions must be approached more cautiously than meetings carried out in public. See ibid.; S. Jersey Publ'g Co., 124 N.J. at 494, 591 A.2d 921 ("To the extent a cognizable privacy interest may be compromised by the required disclosure, the extent of disclosure **591 may be modified appropriately, provided the *168 public interest is not subverted." (citation omitted) ).
The OPMA is not crystal clear on the "promptly available" requirement generally, or as it pertains to the more subtle considerations involved with minutes of closed sessions. Hence, a resort to legislative history is appropriate. DiProspero, 183 N.J. at 492-93, 874 A.2d 1039 ("[I]f there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history....' " (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75, 861 A.2d 123 (2004) ) ). The legislative history is sparse about a generic meaning for "promptly available," but that history does illuminate that the Legislature anticipated the need for extra flexibility when it comes to closed-session portions of public meetings.
The OPMA's legislative history qualifies the requirement of prompt disclosure of meeting minutes in recognition of the fact that closed-session minutes may need to be shielded from the public for a longer period due to the sensitive nature of the material under discussion. Statement to Third Official Copy Reprint of A. 1030 12 (L. 1975, c. 231) ("Minutes must be promptly available to the public, except for material covering meetings or portions of meetings closed to the public." (emphasis added) ); see also N.J.S.A. 10:4-14 (minutes must be made "promptly available to the public to the extent that making such matters public shall not be inconsistent with [ N.J.S.A. 10:4-12 ]"). Indeed, the Legislature was aware that certain sensitive material must be carefully reviewed and anticipated that some of the information under review may never reach the public's eyes. Statement to Third Official Copy Reprint of A. 1030 12 ("[ N.J.S.A. 10:4-13 ] requires that whenever a public body seeks to meet in private it must first pass a resolution ... [that] must also state the general nature of the matters to be discussed and approximately when, if ever, the matters discussed can be made public." (emphasis added) ).
**592 B.
The parties and amici generally agree that the Appellate Division correctly took an essentially fact-sensitive, case-by-case approach to the requirement that minutes be "promptly available" to the public. We agree.
The term's application requires context. The Legislature's choice of the phrase implicitly requires individual assessments as specific facts unfold in matters, while at the same time signaling to public bodies the legislative expectation that the release of minutes must be considered a priority, an obligation, and not a nuisance to be addressed when convenient. The Appellate Division sought to thoughtfully balance the OPMA's language and underlying legislative goals and to create a fair balance between the public's need for information and a public entity's autonomy and need for logistical flexibility.
The delay that occurred here-the release of minutes for the September 2014 meeting in February 2015-is unreasonable no matter the individual or combination of excuses advanced by the Board. Our concern is with the remedy selected by the Appellate Division. A public entity must establish its meeting schedule to suit the managerial obligations of its public responsibilities while also acting responsibly concerning its obligation to make minutes promptly available to the public. The OPMA's requirements apply to a diverse range of public entities, so no one set amount of time for the release of minutes should be mandated. Reasonableness must remain the touchstone when assessing the *169 promptness of a public entity's actions in this area. We are reluctant to set a specific timeframe for the calling of meetings, which should remain the prerogative of the body entrusted with running the public entity. See McGovern, 211 N.J. at 115, 47 A.3d 724 (noting that "public body must be afforded discretion in determining" most effective way of conducting its proceedings).
Hence, although the 2017-18 academic year is nearing its end, we modify the Appellate Division's holding requiring the Board to **593 set a regular meeting schedule that would allow for the approval of minutes within a forty-five-day time period. That having been said, if a public entity, like the Board, were to continue to limit its meetings to five per year, significantly impeding its ability to approve meeting minutes promptly, we might see the issue again.
At argument, we were informed that, with the availability of technology, entities are developing ways to speed the preparation of minutes of public sessions. Indeed, some public bodies are able to release minutes on the very day of the meeting through the contemporaneous electronic production of minutes as the meeting unfolds followed by a vote on the minutes before the meeting is adjourned. We commend such action. Also, some public entities are using separately noticed additional public meetings, with telephonically enhanced access for members, to expedite the approval of minutes. Again, we encourage such ingenuity, which furthers the OPMA's aims. As for minutes of closed sessions, which may require sensitive considerations and even consultation with counsel, we expect public bodies will similarly develop ways to speed the process without shortchanging their decisions as to what may be included for release to the public in such minutes. Cf. Atl. City Convention Ctr. Auth. v. S. Jersey Publ'g Co., 135 N.J. 53, 67-69, 637 A.2d 1261 (1994) (recognizing that public release of executive session minutes requires careful balancing of competing interests); O'Shea v. W. Milford Bd. of Educ., 391 N.J. Super. 534, 539-41, 918 A.2d 735 (App. Div. 2007) (same).
Finally, we add what should be obvious: minutes should be released within days of their approval, unless truly extraordinary circumstances prevent their availability to the public.
VI.
The judgment of the Appellate Division is reversed in part, and affirmed, as modified, in part.
CHIEF JUSTICE RABNER and JUSTICES ALBIN, FERNANDEZ-VINA, and SOLOMON join in JUSTICE LaVECCHIA's opinion. JUSTICES PATTERSON and TIMPONE did not participate.

At oral argument we were informed that faculty who are not recommended for reappointment have grievance rights under the existing collective bargaining agreement.

N.J.S.A. 47:1A-1 to -13.

We do not encourage a process that would have the effect of stifling discussion on important personnel matters.