**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0649-20

SAMUEL TRIPSAS, and
CITIZENS ACTION TO
PRESERVE ORADELL,

     Plaintiffs-Appellants,

v.

BOROUGH OF ORADELL,
MAYOR AND COUNCIL OF
THE BOROUGH OF ORADELL,
PLANNING BOARD OF THE
BOROUGH OF ORADELL, and
MAYOR DIANNE C. DIDIO
OF THE BOROUGH OF ORADELL,

     Defendants-Respondents.

_____

Submitted November 8, 2021 – Decided March 25, 2022

Before Judges Messano and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2854-19.

AbrahamsenGrant, LLC, attorneys for appellants (Richard J. Abrahamsen, on the briefs).

DeCotiis, Fitzpatrick, Cole & Giblin, LLP, attorneys for respondents (Jason M. Hyndman, of counsel and on the brief; Christian J. DiIenno, on the brief).

PER CURIAM

Shortly after the Court issued its opinion in In re Adoption of N.J.A.C. 5:96 & 5:97 by the New Jersey Council on Affordable Housing, 221 N.J. 1 (2015) (Mount Laurel IV),[1] the Borough of Oradell (Oradell) filed a declaratory judgment action seeking to have its affordable housing plan declared sufficient to meet its constitutional obligations. Three years later, in July 2018, Oradell reached an agreement with intervenor Fair Share Housing Center (Fair Share) that resulted in a conditional order of compliance approving the settlement and plan. The order was subject to Oradell complying with certain conditions, including that "[t]he Borough Planning Board . . . adopt and the Borough Council . . . endorse a Housing [E]lement and Fair Share Plan consistent with the minimum terms of the Settlement Agreement."

In November 2018, the Planning Board of the Borough of Oradell (the Board) adopted a Housing Element and Fair Share Plan (HEFSP). In February 2019, the Board reviewed two proposed ordinances, Ordinances 19-03 and 19-

---

[1] The latest of the Court's decisions implementing its decision in S. Burlington Cnty. NAACP v. Twp. of Mount Laurel, 67 N.J. 151 (1975).

04 (the Ordinances), to assure they complied with, or to otherwise identify inconsistencies with, Oradell's Master Plan.

Oradell's governing body subsequently adopted the Ordinances. Ordinance 19-03 amended Oradell's zoning regulations to create "Affordable Housing 1 Residential Zone," and "Affordable Housing 2 Residential Zone." One historic structure, the Van Buskirk House, was within the area rezoned pursuant to Ordinance 19-03. Ordinance 19-04 also amended zoning regulations to create a "Central Business District Overlay Zone," as anticipated in the adopted HEFSP, running along both sides of Kinderkamack Road.

In 2010, the Board had adopted an Historic Preservation Plan Element (HPPE) to its Master Plan, which identified historic buildings for preservation, some of which were on, or in close proximity to, Kinderkamack Road. In 2016, the Board's Master Plan Subcommittee considered, among other things, changes to the zoning regulations in the Central Business District (CBD). Oradell's mayor, Dianne C. Didio, participated as a member of the Subcommittee for several months despite a disqualifying conflict of interest.

In May 2019, plaintiffs Samuel Tripsas, a resident and member of Oradell's Historical Committee, and Citizen Action to Preserve Oradell, which members included residents of Oradell, filed an amended complaint in lieu of

A-0649-20

prerogative writs in the Law Division. Plaintiffs sought to have the court declare the Ordinances invalid because: violations of the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-6 to -21, and the mayor's disqualifying participation, preceded their adoption; and, Ordinance 19-04 was inconsistent with the HPPE, and Oradell's governing body failed to comply with N.J.S.A. 40:55D-62(a).

Following oral argument, the Law Division judge dismissed the complaint. In a written statement of reasons, the judge found that Mayor Didio's second term in office commenced in January 2016, and she sat as a member of the Subcommittee until March 2017, when she recused herself because her husband had "significant interests in property in the CBD zone." However, the judge found there was "no evidence . . . the [m]ayor participated in the process which resulted in" passage of Ordinance 19-04. The judge also concluded because "meetings of . . . [the S]ubcommittee . . . did not constitute a quorum of the . . . Board," there was no violation of OPMA.

The judge cited extensively to deposition testimony from Joseph Burgis, Oradell's planner from 1997 to 2018, noting Burgis "refute[d] all the elements of plaintiffs' case." Burgis acknowledged the Subcommittee conducted working sessions but said "then the information was presented to the full . . . [B]oard" at public meetings, including Saturday meetings. Burgis said 100–150 members

of the public attended the meetings. Burgis also testified the mayor recused herself "early in the process." Burgis said formulation of the HEFSP proceeded separately from the Subcommittee's work, and multifamily housing was permitted on the second floor of all retail businesses in the CBD prior to passage of the Ordinances. The "overlay zone was a mechanism to address" Oradell's "unmet need" for affordable housing and to comply with the 2018 settlement with Fair Share.

The judge also cited the testimony of Mayor Didio, which was corroborated by the testimony of Councilman Stephen Carnevale, a member of the Subcommittee. The judge found the mayor had recused herself from participation in Subcommittee meetings in March 2017, and had also recused herself from settlement discussions with Fair Share.

The judge "f[ound] no evidence that [Oradell] adopted its ordinances in violation of the OPMA . . . [and] no basis in law which would void Ordinances 19-03 and/or 19-04 on account of inconsistency with the [HPPE]." The judge's September 25, 2020 order dismissed plaintiffs' complaint, and this appeal followed.

Before us, plaintiffs reiterate the arguments made in the Law Division. They contend the Ordinances were the product of "multiple violations" of the

A-0649-20

OPMA by the Subcommittee, and the mayor's "conflict of interest" tainted the process, and her recusal did not purge the taint. Plaintiffs claim these alleged violations of the OPMA require us to set aside the Ordinances. Plaintiffs also contend the Ordinances are "inconsistent with the [HPPE]" of the Master Plan and, since the governing body failed to comply with N.J.S.A. 40:55D-62(a), we should declare the Ordinances void.

Having considered the arguments in light of the record and applicable legal standards, we affirm.

I.

We begin by recognizing that to the extent plaintiffs challenge the Board's approval of the HEFSP because it was the product of violations of the OPMA or the mayor's disqualifying conflict, their complaint was untimely. Defendants raised this issue in the Law Division, but the judge never addressed it.

"[P]ursuant to Rule 4:69-6(b)(3), a party seeking the court's review of 'a determination of a planning board or board of adjustment' must commence its action in lieu of prerogative writs within forty-five days of publication of the memorializing resolution." Edison Bd. of Educ. v. Zoning Bd. of Adjustment of Edison, 464 N.J. Super. 298, 308 (App. Div. 2020). Plaintiffs admittedly failed to do so.

A-0649-20

Similarly, "[a] complaint alleging an OPMA violation must be brought within forty-five days 'after the action sought to be voided has been made public[.]'" Ibid. n.5 (second alteration in original) (quoting N.J.S.A. 10:4-15(a)). "Constructive notice is the standard." Ibid. (quoting Jersey City v. State Dep't of Env't Prot., 227 N.J. Super. 5, 22 (App. Div. 1988)). Plaintiffs never alleged the Subcommittee violated the OPMA subsequent to the November 2018 passage of the HEFSP, and we discern no violation of the OPMA thereafter.

Plaintiffs contend that the clock did not begin to run on their claims of the OPMA violations because the Subcommittee's meetings were held in "secret," without any subsequent publication of its actions as required by the OPMA. However, the record contains the March 2016 minutes of the Board's public meeting attended by the mayor. The minutes disclose her appointment to the Subcommittee. At an earlier meeting of the Board, the mayor expressed her concern about the CBD and voiced a desire to meet with the public about properties along Kinderkamack Road. Surely, there was sufficient public notice for plaintiffs to challenge in a timely fashion the mayor's participation in a Board subcommittee based on her disqualifying conflict between March 2016 and her self-imposed recusal in 2017.

A-0649-20

Plaintiffs seemingly claim that they could not challenge the meetings of the Subcommittee because they were never made public until the Board considered adoption of the HEFSP. We discern the argument is that the meetings of the Subcommittee violated the OPMA, and the process thereafter, although public, was tainted. While this does not make plaintiffs' challenge to the Board's action timely, we address the issues presented for the sake of completeness.

"The [OPMA] makes explicit the legislative intent to ensure the public's right to be present at public meetings and to witness government in action." Kean Fed'n of Tchrs. v. Morell, 233 N.J. 566, 570 (2018) (citing N.J.S.A. 10:4-7). The statute is "liberally construed in favor of openness." Burnett v. Gloucester Cnty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 233 (App. Div. 2009) (citing N.J.S.A. 10:4-21). "Any party, including any member of the public, may institute a proceeding in lieu of prerogative writ[s] . . . to challenge any action taken by a public body on the grounds that such action is void for" violating the statute. N.J.S.A. 10:4-15(b).

The OPMA prohibits a public body from holding a meeting "unless adequate notice . . . has been provided to the public." N.J.S.A. 10:4-9(a). The OPMA defines "[m]eeting" as a gathering where "the [then present] members of

a public body" intend "to discuss or act as a unit upon the specific public business of that body. Meeting does not mean or include any such gathering . . . attended by less than an effective majority of the members of a public body . . . ." N.J.S.A. 10:4-8(b).

In Kean Federation of Teachers, the Court noted that a public body's use of subcommittees, which have meetings in advance of public meetings, are common and "not fairly viewed as an inherent subterfuge to eschew public discussion." 233 N.J. at 587. The OPMA does not apply to "informal or purely advisory bodies with no effective authority," and "to be covered by the provisions of th[e] act[,] a meeting must be open to all the public body's members." N.J.S.A. 10:4-7. At the same time, the OPMA makes clear that "[n]o person or public body shall fail to invite a portion of its members to a meeting for the purpose of circumventing" the statute. N.J.S.A. 10:4-11.

Plaintiffs failed to demonstrate the meetings of the Subcommittee consisted of a quorum of Board members, and their claims of unexpurgated taint caused by the mayor's fourteen-month participation are mere speculation. Most importantly, none of the Subcommittee's meetings resulted in formal or even informal action that was not ultimately subject to exposure in the sunlight of public meetings. See Neu v. Planning Bd. of Union, 352 N.J. Super. 544, 554

9

(App. Div. 2002) (holding that private meeting of developer with mayor, board member, and consultant did not violate the OPMA, and there was not "any action . . . taken or decision made that was not the subject of subsequent public hearings").

II.

Plaintiffs also contend the Ordinances must be set aside because they conflict with the HPPE of the Master Plan, and the governing body never fulfilled its obligation under N.J.S.A. 40:55D-62(a).  We again disagree.

N.J.S.A. 40:55D-28(b) requires a master plan include two things:  "[a] statement of objectives, principles, assumptions, policies and standards upon which the constituent proposals for the physical, economic and social development of the municipality are based"; and "[a] land use plan element" that includes several required items.  N.J.S.A. 40:55D-28(b)(1) and (b)(2).  The statute then sets forth fifteen other discretionary elements, including a "housing plan element," and an "historic preservation plan element."  N.J.S.A. 40:55D-28(b)(3) and (b)(10).

N.J.S.A. 40:55D-62(a) provides:

> The governing body may adopt or amend a zoning ordinance . . . . Such ordinance shall be adopted after the planning board has adopted the land use plan element and the housing plan element of a master plan,

10

and all of the provisions of such zoning ordinance or any amendment or revision thereto shall either be substantially consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements; provided that the governing body may adopt a zoning ordinance . . . which in whole or part is inconsistent with or not designed to effectuate the land use plan element and the housing plan element, but only by affirmative vote of a majority of the full authorized membership of the governing body, with the reasons of the governing body for so acting set forth in a resolution and recorded in its minutes when adopting such a zoning ordinance . . . .

[(Emphasis added).]

The governing body's failure to comply with the statute will result in invalidation of the ordinance. Willoughby v. Wolfson Grp., Inc., 332 N.J. Super. 223, 229–30 (App. Div. 2000).

Plaintiffs contend Ordinance 19-04, in particular, is inconsistent with the HPPE of the Master Plan because it adopts the CBD Overlay in an area previously recognized as deserving particular treatment given the proximity to historic structures. The trial judge never directly addressed the issue.

However, defendants argue, and we agree, the plain language of N.J.S.A. 40:55D-62(a) imposes an obligation on the governing body to explain its reasons for adopting a zoning ordinance, and approve the change by a majority vote, only if the ordinance is inconsistent with the land use plan element or the

11

housing plan element of the master plan. Plaintiffs have never asserted the Ordinances were inconsistent with those two parts of the master plan.

We interpret the meaning of the provisions of the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -163, de novo. Shipyard Assocs., LP v. City of Hoboken, 242 N.J. 23, 38 (2020) (citing 388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington, 221 N.J. 318, 338 (2015)). We "first consider[] 'the statute's plain language, ascribing to the words used "their ordinary meaning and significance."'" Ibid. (quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012)). When those words are clear and unambiguous, we should give them "their literal significance, unless it is clear from the text and purpose of the statute that such meaning was not intended." Ibid. (quoting Turner v. First Union Nat'l Bank, 162 N.J. 75, 84 (1999)).

The plain language of N.J.S.A. 40:55D-62(a) requires the governing body to explain its decision to adopt a new, or amend an existing, zoning regulation if it is inconsistent with the land use plan element or the housing plan element of the municipal master plan, a decision first made by the planning board pursuant to N.J.S.A. 40:55D-26(a). See Myers v. Ocean City Zoning Bd. of Adjustment, 439 N.J. Super. 96, 101–02 (App. Div. 2015) (noting governing body may adopt an ordinance inconsistent with those two master plan elements

by majority vote and with explanation of its reasons). The Legislature has not required the governing body to do so regarding an inconsistency between the proposed ordinance and any of the other discretionary elements of the master plan, including the HPPE. Plaintiffs have cited no authority to the contrary.

Nevertheless, it appears from the record the Board did review the Ordinances for inconsistency with the Master Plan, and it concluded they were consistent. "Such a determination by the Board is entitled to deference and great weight." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 383 (1995).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0649-20