**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3294-21

FRANK ANGRISANI,

      Plaintiff-Appellant,

v.

THE LAW OFFICE OF LEO B.
DUBLER, III, LLC, LEO B.
DUBLER III, individually, LOCKS
LAW FIRM, LLC, MICHAEL A.
GALPERN, ESQ., FISCHER, PORTER
& THOMAS, P.C., ARTHUR L.
"SCOTT" PORTER, ESQ., TALBOT
B. KRAMER, JR., ESQ., DONNA
L. FREIDEL, ESQ., and FREIDEL
& KRAMER, P.C.,

      Defendants-Respondents.

_____

Argued January 23, 2024 – Decided January 30, 2024

Before Judges Haas and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-1041-17.

Frank Angrisani, appellant, argued the cause pro se (Offit Kurman, PA, attorneys; Branka Banic, on the briefs).

Jay H. Greenblatt argued the cause for respondents The Law Office of Leo B. Dubler, III, LLC and Leo B. Dubler, III (Greenblatt & Laube, PC, attorneys; Jay H. Greenblatt, on the brief).

Thomas N. Gamarello argued the cause for respondents Fischer, Porter & Thomas, PC, and Arthur Scott Porter, Esq. (Schenck, Price, Smith & King, LLP, attorneys; Eric Andrew Inglis, of counsel and on the brief).

John L. Slimm argued the cause for respondents Freidel & Kramer, PC, Donna L. Freidel, Esq., and Talbot B. Kramer, Jr., Esq. (Marshall Dennehey, attorneys; John L. Slimm and Arthur F. Wheeler, on the brief).

Michael P. Chipko argued the cause for respondents Locks Law Firm and Michael Galpern, Esq., (Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, attorneys, join in the brief of respondents The Law Office of Leo B. Dubler, III, LLC, and Leo B. Dubler, III, and the brief of respondents Fisher, Porter & Thomas, PC, and Arthur Scott Porter, Esq.).

PER CURIAM

In this legal malpractice case, plaintiff Frank Angrisani appeals from the Law Division's order granting summary judgment to defendants and dismissing plaintiff's complaint against his former attorneys. We affirm.

I.

The parties are fully familiar with the underlying procedural history and facts of this matter. We summarized the most salient points of this early history in our decision in the companion appeal, <u>Angrisani v. Costello & Mains, LLC</u>, Docket No. A-2718-20 (App. Div. Dec. 6, 2023). We incorporate that discussion here by reference.

After plaintiff settled his legal action in the litigation involving Financial Technology Ventures, L.P. (FTV) and Nexxar Group, Inc. (Nexxar), he retained the Costello firm to institute a legal malpractice action against his attorneys in that matter, Larry Orloff, Esq. and his firm Orloff, Lowenbach, Stifelman & Siegel, PA. (OLSS). Eventually, plaintiff hired defendants Leo B. Dubler, III, Esq., and the Law Office of Leo B. Dubler, III (individually or collectively, Dubler) as Costello's co-counsel in that case. Costello was later relieved as plaintiff's counsel and Dubler remained as sole counsel in the Orloff litigation.

Plaintiff then retained defendants Michael A. Galpern, Esq. and Locks Law Firm, LLC (individually or collectively, Galpern) and Arthur "Scott" L. Porter, Esq. and Fischer, Porter & Thomas, PC (individually or collectively, Porter), as legal experts in the Orloff litigation. Galpern and Porter each rendered expert opinions in March 2013 and again in May 2013. These reports

identified deviations from the standard of care that Orloff allegedly committed when he was handling plaintiff's claims in the FTV litigation.

To support his claim for damages against Orloff and OLSS, plaintiff submitted a report authored by the Tinari Economics Group (Tinari), entitled "An Appraisal of Economic Loss to Frank Angrisani," dated May 7, 2013. The Tinari expert report analyzed plaintiff's estimated damages by considering three components: "contract earnings," "loss of investment," and "increased litigation fees." The Tinari expert report set forth the estimated total present value of the economic loss sustained by plaintiff as $11,583,180. The report did not provide an analysis or estimate of the damages attributable to Orloff's alleged negligence, either directly or by estimating the settlement value of plaintiff's claims in the FTV litigation in the absence of negligence.

On November 26, 2013, the trial court dismissed all of plaintiff's legal malpractice claims on summary judgment because it found that plaintiff's expert reports did not adequately calculate plaintiff's claim for damages. In its fifty-two-page written opinion, the trial court stated:

> This [c]ourt's finding in granting [OLSS]'s motion is based on that no expert has calculated the damages allegedly suffered by [plaintiff] as a result of Orloff's alleged negligence. Having no reports of damages based on admissible evidence, any damages would be based on speculation or conjecture because there is not

4

expert testimony on the subject of damages that is admissible.

There is no dispute that the "fair settlement value," can only be established through expert testimony same as with "ultimate conclusion." Having reviewed the expert reports submitted by [plaintiff], the [c]ourt has difficulty making conclusions or findings as to what the jury could use to evaluate whether [plaintiff] settled for fair value, and if not, what the fair value should have been or what he would have recovered at trial. The [c]ourt queries what are the ascertainable damages suffered by [plaintiff].

Plaintiff then retained defendants Talbot B. Kramer, Jr., Esq., Donna L. Freidel, Esq., and Freidel & Kramer, PC (individually or collectively, Kramer) to move for reconsideration of that dismissal. When reconsideration was denied, Kramer handled the appeal in Orloff of the dismissal of plaintiff's legal malpractice claims against OLSS and Orloff.

On February 12, 2016, we affirmed the trial court's dismissal of plaintiff's legal malpractice claims against Orloff and OLSS, as well as the denial of reconsideration. Orloff, Lowenbach, Stifelman & Siegel, PA v. Angrisani, No. A-3724-13 (App. Div. Feb. 12, 2016), certif. denied, 226 N.J. 211 (2016).

The Dubler firm then brought suit against plaintiff for unpaid legal fees. Plaintiff responded by filing an amended answer that included a counterclaim alleging legal malpractice against the Dubler firm, and a third-party complaint

for legal malpractice against Dubler individually. Dubler filed an answer to plaintiff's malpractice claims, and asserted a fourth-party complaint against Kramer for indemnification and contribution.

The trial court thereafter severed Dubler's claim for counsel fees and issued an order that opened plaintiff's malpractice claims in a new action. Plaintiff filed an amended complaint, joining Galpern and Porter as additional defendants.

During discovery, plaintiff provided defendant with the August 1, 2020 liability expert report of Scott B. Piekarsky, Esq., as well as his supplemental report dated November 15, 2020. To support his calculation of damages, plaintiff relied on the supplemental economic reports issued by the renamed Sobel Tinari Economics Group, authored by Kristin Kucsma, M.A., a principal of that group, dated June 10 and August 1, 2020.

In October 2020, all defendants moved for summary judgment. Defendants noted that in support of his malpractice claims, plaintiff had essentially repackaged the Tinari report that the trial court, and this court, in Orloff had already ruled was insufficient to establish plaintiff's claim for damages.

6

The trial court agreed with defendants' assessment of plaintiff's expert reports, granted summary judgment to defendants, and dismissed plaintiff's complaint. The court stated it was compelled to dismiss plaintiff's complaint "because of the fact that all this information was before [the trial court in Orloff] and the Appellate Division," and "[t]here's nothing new that's been presented" in the present litigation.

## II.

On appeal, plaintiff argues in Point I of his brief that the trial court erroneously applied the doctrine of collateral estoppel to bar his expert reports because the sufficiency of the proffered expert economic loss testimony and legal malpractice proofs against defendants was not adjudicated fully and fairly in the Orloff litigation. In Point II, plaintiff asserts that the trial court's application of collateral estoppel mistakenly disregarded the claims of defendants' negligence in precipitating the adverse results in the Orloff litigation. We disagree with both contentions.

Our review of a trial court's grant of summary judgment is de novo, applying the same legal standard as the trial court. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Under that standard, summary judgment will be granted when "the

A-3294-21

competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law."  Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38); see also R. 4:46-2(c).

To present a prima facie legal malpractice claim, a claimant must establish "1) the existence of an attorney-client relationship creating a duty of care upon the attorney; 2) that the attorney breached the duty owed; 3) that the breach was the proximate cause of any damages sustained; and 4) that actual damages were incurred."  Cortez v. Gindhart, 435 N.J. Super. 589, 598 (App. Div. 2014) (quoting Sommers v. McKinney, 287 N.J. Super. 1, 9-10 (App. Div. 1996)).  Actual damages are damages that are "real and substantial as opposed to speculative."  Greenwald v. Bronkesh, 131 N.J. 483, 495 (1995).  Damages must be supported by more than "conjecture, surmise or suspicion."  2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 488 (App. Div. 1994).

As noted above, the trial court found that plaintiff could not establish actual damages in this case because the expert reports he submitted had already been found wanting by the trial court and this court in the Orloff litigation.  On appeal, plaintiff contends that neither the trial court nor this court in the Orloff

case ruled that the 2013 Tinari report was inadmissible. Plaintiff argues that the trial court "erroneously construed the ruling in the Orloff litigation as establishing that the Tinari analysis was a net opinion." He also argues that the Appellate Division "simply did not hold that the original Tinari report was a net opinion, and it was not on that basis that summary judgment was affirmed in the Orloff litigation."

According to plaintiff, "[t]he deficiency in the Orloff matter was the failure of the plaintiff's attorneys and their legal, not the economic expert, to establish proximate cause between the alleged negligence of Orloff and the damages that were quantified by the Tinari Group." Plaintiff asserts that "[t]he dereliction of [his] counsel resulted in insufficient evidence of the likelihood of success at trial," and therefore, he was "deprived of the opportunity of proving harm by way of either a suit within a suit to simulate the result that would have occurred, or through expert testimony on the anticipated trial outcome as a matter of reasonable probability."

Plaintiff's argument is not persuasive because he misstates the trial court's and this court's decisions in the Orloff litigation. In fact, both the trial court and this court clearly determined that the Tinari report was inadmissible to support plaintiff's claim for damages.

In the Orloff litigation, Orloff moved to dismiss plaintiff's legal malpractice claims based on plaintiff's inability to "quantify damages," as well as his failure to support his claims of liability. Orloff argued that plaintiff failed to provide expert testimony as to actual damages, and the trial court held that "[b]ecause [plaintiff] cannot prove the damages element of his legal malpractice claim, it must be dismissed as a matter of law."

On the issue of damages, the trial court explained:

> This [c]ourt's findings in granting plaintiff's motion [are] based on that no expert has calculated the damages allegedly suffered by [plaintiff] as a result of Orloff's alleged negligence. Having no reports of damages based on admissible evidence, any damages would be based on speculation or conjecture because there is not expert testimony on the subject of damages that is admissible.
>
> There is no dispute that the "fair settlement value," can only be estimated through expert testimony same as with "ultimate conclusion." Having reviewed the expert reports submitted by [plaintiff], the [c]ourt has difficulty making conclusions or findings as to what the jury could use to evaluate whether [plaintiff] settled for fair value, and if not, what the fair value should have been or what he would have recovered at trial. The [c]ourt queries what are the ascertainable damages suffered by [plaintiff].

As to the deficiencies in plaintiff's damages evidence as set forth in the Tinari report, the trial court further explained:

10

> In reviewing the Tinari report, the movant [Orloff] contends that Tinari primarily performed a "liquidation analysis" of [plaintiff's] share as of December 31, 2005 and that his analysis does not support [plaintiff's] diminished settlement value theory, or his newly concocted ultimate success on the merits theory and is not relevant to this motion, therefore it cannot be utilized as a substitute for the expert testimony on the issue of damages necessary to defeat this motion. This [c]ourt is well aware of this expert's qualifications and the movant has argued that the analysis is flawed being based essentially on the illegal operation of UNO in Brazil but does not address the fair settlement value as argued by the defendant in his pleadings.
>
> . . . .
>
> . . . After reviewing the Tinari report, this [c]ourt does not find that he analyzes [plaintiff's] underlying claims, but does an evaluation of the business which foundation is built on an illegal operation therefore how could this report be admissible where the foundation upon which it is built is full of holes as one cannot profit from illegal operation . . . .

Additionally, the trial court found that the Tinari report did not support

plaintiff's claim for damages, and stated:

> Tinari does not value the underlying claims and does not value the claims that were not asserted. Instead, Tinari sets forth a hypothetical liquidation value of [plaintiff's] shares in Nexxar as of December 31, 2005. The [c]ourt concurs with the movant that they cannot find the relevancy of that analysis nor contemplate how this analysis had anything to do with what [plaintiff] would have received had he been successful at trial. [Plaintiff] never sought the liquidation of Nexxar, nor

was it part of the underlying case, wherein UNO failed because of its illegal operation in Brazil where Nexxar accordingly failed as well. How does this analysis of a failing business assist the jury in finding damages proximately caused by Orloff in representing him in his litigation with Nexxar/FTV?

The [c]ourt did find an interesting comment of the movant that Tinari's liquidation value ignores reality. Tinari's analysis is based on projections of what the company would have earned from an <u>illegal venture</u>. It is well settled that courts should not become involved in an attempt by a party to profit off an illegal venture therefore isn't . . . plaintiff seeking values of shares in Nexxar that are not recoverable as a matter of law? Furthermore, Tinari's liquidation analysis did not consider that after UNO was shut down Nexxar went out of business shortly thereafter and this evaluation by Tinari ignores that the company is not operating furthermore the profits were derived solely from an illegal venture is worthless and this [c]ourt so finds. This Tinari report does not support what the fair settlement value of the third party plaintiff claims nor what he could have received if he was successful in litigating the underlying matter to a conclusion which the third party saw fit not to do by settling the matter with subsequent counsel.

Thus, in granting summary judgment to Orloff dismissing plaintiff's legal malpractice claims, the trial court specifically found that the Tinari report was legally inadequate, explaining:

It is well settled that where, as here, the allegation is that the attorney's negligence resulted in an insufficient settlement amount or hindered the ultimate success of settlement negotiations, expert testimony is required to

12

establish what would constitute a fair settlement value for the claims or what should have been the ultimate outcome of the underlying case, absent the alleged malpractice. When no such testimony is offered a legal malpractice claim must be dismissed. To support his claims, [plaintiff] submitted reports from several experts–Tinari, Porter, and Galpern. The [c]ourt finds that none of these experts performed the requisite analysis [of] what constitutes the fair settlement value of [plaintiff's] claims or what would have been the successful outcome of the underlying case, absent the alleged malpractice. While Tinari's report finds the net value of the claims that were lost to be $11,583,180, the [c]ourt finds Tinari's report primarily performed a liquidation analysis of [plaintiff's] shares as of December 31, 2005 and that his analysis does not support [plaintiff's] diminished settlement value theory or in the alternative his ultimate success on the merits theory. As such, Tinari's report cannot be utilized as a substitute for expert testimony on the issue of damages, which is necessary to defeat this motion. Furthermore, Tinari's analysis is based on projections of what the company would have earned from an illegal venture, i.e., UNO's northbound Brazil operations. UNO's business accounted for essentially all of Nexxar's profits. Nexxar lost the bulk of its revenues, and it went out of business not too long after UNO was shut down in May 2005. Tinari's report ignores the fact that any profits derived from such an illegal venture are worthless. Thus, his report does not provide an accurate fair settlement value of . . . plaintiff's claims. The [c]ourt finds that the necessary expert testimony o[n] damages has not been provided to warrant this matter going forward to trial on the issue of profession negligence by OLSS or Orloff.

Therefore, contrary to plaintiff's contention on appeal, the trial court granted summary judgment dismissing plaintiff's legal malpractice claims precisely because it found that the Tinari report could not support plaintiff's claim for actual damages.

In affirming the trial court's grant of summary judgment in our decision in Orloff, we explained

> the trial judge found that none of the expert reports "performed the requisite analysis [of] what constitutes the fair settlement value of [plaintiff's] claims or what would have been the successful outcome of the underlying case, absent the alleged malpractice." He further found that Tinari's report, by performing liquidation analysis of [plaintiff's] share as of a relevant date, neither supported the diminished settlement value theory which formed the first grounds for recovery, nor the ultimate success on the merits theory. Because he found none of the reports demonstrated either the fair settlement value of the claims, or the likely outcome absent the alleged malpractice, the judge reasoned the motion for summary judgment had to be granted because "[w]hen no such testimony is offered, a legal malpractice claim must be dismissed."
>
> [Orloff, slip op. at 4-5.]

As a result, we "concur[red] with the motion judge's view concerning the lack of evidence of proximate cause and actual damages," Id. at 9. This court found that plaintiff failed to establish either proximate cause or damages under either a diminished settlement theory or trial within a trial theory. We stated

14

that "[u]nder either legal malpractice theory[,] [plaintiff] is required to present proof as a 'matter of reasonable probability' of the outcome at trial if the alleged malpractice had not occurred," but that "[s]uch proofs are absent in the expert reports." Id. at 10-11.

Thus, contrary to plaintiff's contention, both the trial court and this court found the Tinari report to be insufficient and therefore inadmissible to prove his actual damages under either a diminished settlement theory or trial within a trial theory. Plaintiff's legal malpractice claim was dismissed because he failed to prove actual damages. The trial court found that the Tinari report did not calculate the actual damages allegedly suffered by plaintiff and, therefore, the report was inadmissible to support claim for damages. Without expert testimony to support his claim for damages, the trial court properly found that plaintiff's legal malpractice claim failed as a matter of law.

Plaintiff next argues that the trial court erred by relying upon the Orloff decisions to collaterally estop him from relying upon a repackaged Tinari report to attempt to prove actual damages. He argues that collateral estoppel cannot apply in the present case because the "Orloff litigation addressed Orloff's representation of [plaintiff] in the FTV/Nexxar litigation, and whether his professional negligence led to a diminished settlement of that action," but did

15

not "consider the subsequent negligence of the defendants herein [Dubler, Kramer, Galpern, and Porter] and whether such negligence may be linked to the damages suffered by" plaintiff.

Plaintiff's argument is not persuasive because it is based on his contention that "the [Orloff] courts did not reject the Tinari economic analysis itself." However, as explained above, both the trial court and this court in the Orloff litigation determined that the Tinari report was inadmissible to prove plaintiff's damages. Because plaintiff's claims for damages in the present case were also based on the Tinari report, collateral estoppel was applicable and appropriate because all five collateral estoppel requirements were met.

"As a general principle, '[c]ollateral estoppel is that branch of . . . res judicata which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.'" In re Liquidation of Integrity Ins. Co., 214 N.J. 51, 66 (2013) (quoting N.J. Div. of Youth & Fam. Servs. v. R.D., 207 N.J. 88, 114 (2011)). The application of collateral estoppel is a question of law, Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 173 (App. Div. 2000), and questions of law are reviewed de novo. Kean Fed'n of Tchrs. v. Morell, 233 N.J. 566, 583 (2018).

A-3294-21

It is well settled that, for collateral estoppel to foreclose the re-litigation of an issue,

> the party asserting the bar must show that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006) (quoting In re Est. of Dawson, 136 N.J. 1, 20-21 (1994)).]

All of these requirements were met in this case. First, the issue of damages in both the Orloff litigation and the present action were identical. The issue was whether plaintiff could prove he suffered actual damages as a result of legal malpractice. However, in both cases plaintiff failed to establish the fair settlement value of his claims and failed to satisfy his burden to demonstrate the actual damages he suffered, as a result of his attorney's alleged malpractice, be it by Orloff in the Orloff litigation or by Dubler, Kramer, Galpern, and Porter in this action. As a result, he could not demonstrate in that action or this one that there was a likelihood of success in trying the FTV litigation to judgment.

17

Plaintiff's attempt to distinguish his legal malpractice claims against Orloff in the Orloff litigation from his legal malpractice claims against defendants in the present matter is unavailing.  In both matters, the issues of causation and damages were identical.  While plaintiff focuses on causation, arguing that the proofs on proximate cause were different in the two matters, he cannot avoid the fact that the issues of damages in both cases were identical.  Thus, regardless of how plaintiff attempts to rephrase the issues, the damages issues were the same and, therefore, the first factor for collateral estoppel was satisfied.

Second, the admissibility of the Tinari report was actually litigated in the Orloff litigation.  As set forth above, the parties argued the issue extensively when Orloff moved for summary judgment and again before this court on appeal.  Indeed, we specifically determined that plaintiff failed to "establish either proximate cause or damages."  Orloff, slip op. at 13.

Plaintiff attempts to dispute this factor by arguing that the proximate cause in this action, the negligence of defendants at trial here, was separate and distinct from the proximate cause in the Orloff litigation, namely, Orloff's negligence.  While that may be correct, the issue of proximate cause is itself separate and distinct from the issue of damages.  Both issues of proximate cause and damages

were thoroughly argued before, and considered by, the trial court and this court. Thus, the issue of damages and the admissibility of the Tinari report was actually litigated in the Orloff litigation, and therefore, the second factor for collateral estoppel was satisfied.

Third, a final judgment on the merits was issued in the Orloff litigation. There, the trial court issued an order dismissing plaintiff's legal malpractice claims against Orloff and OLSS with prejudice, and that order was affirmed on appeal. Orloff, slip op. at 14. Fourth, the court's determination that plaintiff could not prove damages was critical to the decision to dismiss his legal malpractice claims against Orloff and was similarly the basis for the affirmance of that dismissal on appeal. Ibid. Thus, the determination of the issue was essential to the judgment in the Orloff litigation.

Finally, plaintiff was a party in the Orloff litigation and is the plaintiff in the present litigation. Thus, the party against whom the doctrine was asserted was a party to the earlier proceeding, and therefore, the fifth factor for collateral estoppel was satisfied. Olivieri, 186 N.J. at 521; Est. of Dawson, 136 N.J. at 20-21.

Accordingly, because all of the necessary factors were satisfied, the trial court correctly determined that plaintiff's claim for damages was barred. He

relied upon the same expert report in both cases and, once that report was found wanting in the Orloff litigation, the trial court in this matter properly found that plaintiff was collaterally estopped from relying on that report to attempt to prove actual damages in this case.

In an attempt to avoid this result, plaintiff next contends that the reports he submitted in support of his legal malpractice claim in this case were substantially different than the Tinari report he relied upon in the Orloff litigation. Plaintiff asserts that the trial court "ignored that [he] may have and did have the expert proof, lacking in the Orloff litigation, to support the claim for insufficient settlement as well as proximate cause." He argues that

> Scott Piekarsky's 2020 reports addressed the measures plaintiff's prior attorneys and experts took to prove proximate cause, and concluded that the defendants were negligent in failing to identify and articulate the connection between the specific categories of damages and the negligent acts and omissions by Orloff and thus failed to establish the case within the case in the Orloff litigation.

Plaintiff's argument lacks merit. He does not address the fact that the reports he submitted in this case, like the original Tinari report, do not set forth the fair settlement value of his claims. In fact, none of plaintiff's experts set forth the fair settlement value of the claims. Indeed, in her August 1, 2020 supplemental report, Kucsma states: "As economists, it is not our responsibility

20

to determine a 'fair settlement amount' or the outcome of a completed litigation but rather it is to render an independent appraisal of economic damages." Thus, plaintiff lacked evidence to prove at trial that the $800,000 settlement was insufficient because it was for less than the fair settlement value of his claims. Moreover, there was no evidence that FTV and Nexxar would have paid a larger settlement amount.

Plaintiff argues that his "economic damages experts have re-examined and tied together the various elements of damages, and plaintiff's liability expert, Piekarsky, has incorporated these findings in his expert and rebuttal reports, including benchmarks for the damages [plaintiff] incurred, which were found lacking in the Orloff litigation." He also argues that the trial court and the Appellate Division in the Orloff litigation did not reject the findings in the 2013 Tinari report, "as if to suggest that the data developed in that earlier report were somehow inaccurate. Rather, this [c]ourt found that there was a failure to establish either proximate cause or damages under either a diminished settlement theory or a trial within a trial theory." According to plaintiff, "[t]hese are now issues of legal malpractice, not inaccurate data or faulty valuations, and lie at the feet of plaintiffs' attorneys and legal malpractice experts, not the Tinari economic damages report."

21

Plaintiff's argument is not persuasive. First, Piekarsky is not an economist and relied entirely on the opinions expressed in the Tinari report. He opined that "[t]he Tinari Economics Group report's valuations and damages were based upon well established and existing tax laws, accounting and valuation principles, techniques, methodologies, and case law dispelling any question of speculation." When he considered "the fourth requirement for proving legal malpractice which is that there were actual damages," he reviewed and relied on the Tinari report, and "[a]fter reviewing Dr. Tinari's Economic Report, [he] concur[ed] with the methodologies and sources used to construct the value of Nexxar and Mr. Angrisani's share of the value which was lost[.]"

According to Piekarsky,

> The Tinari report was more than just a well[-] documented set of damages, it established the actual damages based upon the principles and authorities used in the valuation of companies and the long standing acceptable practices, acceptable methodologies used, and the credible case law to support the calculated losses and the fair settlement value for each identified damage.

Ultimately, Piekarsky concluded that plaintiff's total quantifiable losses were $11,583,180, the exact amount set forth in the Tinari report. In fact, he relied upon the Tinari report exclusively to support his contention that plaintiff suffered actual damages.

22

Second, as set forth above, both the trial court and this court in the Orloff litigation determined that the Tinari report was inadmissible to support plaintiff's claims for actual damages. Piekarsky's unsupported contention that the Tinari report was reliable and that the methodologies used were valid does not make them so.

Third, the sufficiency and reliability of the Tinari report was argued extensively before the trial court and this court in that action. Indeed, prior to his appeal in the Orloff litigation, plaintiff sought additional commentary from the Tinari Group regarding its economic analysis, and it provided supplemental reports dated February 7 and April 7, 2014. Plaintiff's appellate brief and reply brief in the Orloff litigation, which sought reversal of the trial court's holding that the Tinari report was inadmissible to support his claim of damages, incorporated the opinions expressed in those supplemental reports. We rejected plaintiff's argument and affirmed the holding that the Tinari report was inadmissible to prove plaintiff's actual damages. Orloff, slip op. at 8-13.

Fourth, Piekarsky's opinion that the Orloff trial court and this court simply misunderstood the Tinari analysis, were confused, or were misled by Orloff's counsel, lacks merit. In the present appeal, plaintiff argues that both the trial court and this court were mistaken, likely because they were confused by the

use of the word "liquidated" in the Tinari report. To support his position, plaintiff produced two additional supplemental reports of Kucsma, who was a co-author of the original 2013 Tinari report. Plaintiff contends that Kucsma "rebutted any kind of presumption that plaintiff was relying on a liquidation analysis." In the appendix of both of her supplemental reports, dated June 10, 2020, and August 1, 2020, Kucsma explained that the appendix showed

> the manner in which [plaintiff] would have been compensated, if the value of the Company [Nexxar] were $341,287,521, and if the Company were liquidated in December 2005. [SOURCE: Tinari Economics Group, An Appraisal of Economic Loss to Frank Angrisani, May 7, 2013.]
>
> It seems as though there may be some confusion, as to the use of the word "liquidated" in the aforementioned statement. In no way is the context to assume a bankruptcy, dissolution or winding up of the Company, where the Company would have been sold for less than the fair market value. We use the word "liquidate" to mean the apportioning of assets and the calculation of liabilities, a necessary procedure to be performed in any financing, merger or acquisition transaction.
>
> The investment community has defined and readily uses the word "liquidation preference" within its shareholder agreements. The liquidation preference is a mechanism that legally establishes how much an investor would receive upon a sale, dissolution or winding up of a company. It also establishes the hierarchy of which investors are to be paid. The rights provided to each shareholder are found in the stock purchase agreements.

24

The foregoing passage was taken verbatim from the February 7, 2014 supplemental report, and also reproduced verbatim in Piekarsky's August 1, 2020 expert report. As set forth above, the arguments in the February 7, 2014 supplemental report were incorporated in plaintiff's appellate briefs in the Orloff litigation, and therefore, are not new and were previously considered and rejected by this court.

Finally, Kucsma's supplemental reports provide no support to plaintiff's argument because they are fundamentally identical to the 2013 Tinari report and the February 7, 2014 and April 7, 2014 supplemental reports. In her June 10, 2020 supplemental report, Kucsma merely criticizes the trial court's opinion in the Orloff litigation. The seven-page appendix attached to the supplemental report is, with the exception of the last three paragraphs, a verbatim reproduction of the February 7, 2014 supplement report. The last three paragraphs of the appendix are a verbatim reproduction from the April 7, 2014 supplemental report.

Furthermore, Kucsma's August 1, 2020 supplemental report is essentially a verbatim reproduction of the 2013 Tinari Group report. Indeed, just as the 2013 report did, Kucsma concluded that plaintiff sustained damages totaling $11,583,180. This report also contains a seven-page appendix, which mirrors

25

the appendix attached to the June 10, 2020 supplemental report (which was essentially a verbatim reproduction of the February 7, 2014 and April 7, 2014 supplemental reports).

Kucsma's August 1, 2020 supplemental report does contain references to Piekarsky's report and comments consistent with Piekarsky's contention that the Orloff trial and appellate courts reached the wrong conclusion. It also contains an ostensibly new argument that was not in the original 2013 Tinari report. However, this new argument merely consists of Kucsma's review of litigation "verdicts and settlements for cases with claims similar to those asserted by [plaintiff], in the State of New Jersey, [that] ranged between $2,476,248 and $33,487,500." Kucsma named numerous cases and said that the average of the verdicts and settlements was $12,509,009. Apparently, Kucsma's review of the verdicts and settlements was included in the report to support her contention that the estimate of the total loss calculated by the Tinari group was reasonable, as it is consistent with average of those verdicts and settlements. Nevertheless, those verdicts and settlements would not be germane to plaintiff's claim for damages.

In sum, Kucsma's 2020 supplemental reports were identical in substance to the Tinari reports that were rejected in the Orloff litigation. That includes the

original 2013 Tinari report that was presented to and rejected by the trial court and the Appellate Division, and the February 7 and April 7, 2014 reports first presented in the appeal, which this court rejected when we affirmed the trial court's conclusion that the original Tinari report was inadmissible to support plaintiff's claim for damages.

Accordingly, we conclude that the trial court properly found that Kucsma's 2020 reports were essentially identical to the Tinari reports, and therefore, they were properly found to be inadmissible under the collateral estoppel doctrine.

Finally, plaintiff contends that the Orloff court erred in concluding that UNO's operation was illegal. He argues that "[t]he court below assumed UNO was illegal, as the trial court in Orloff offhandedly so concluded[.]" According to plaintiff, "the defendants failed to disabuse [the trial court in the Orloff litigation] of the notion that UNO was 'illegal,' and to advance the conclusions to the contrary of international compliance experts, Graves, Erb and McDonald." We disagree.

First, the facts of this case fall squarely within the invited-error doctrine. "The doctrine of invited error operates to bar a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when

A-3294-21

that party urged the lower court to adopt the proposition now alleged to be error." Brett v. Great Am. Recreation, 144 N.J. 479, 503 (1996). The doctrine "is intended to 'prevent [a party] from manipulating the system' and will apply 'when a [party] in some way has led the court into error' while pursuing a tactical advantage that does not work as planned." State v. Williams, 219 N.J. 89, 100 (2014) (quoting State v. A.R., 213 N.J. 542, 561-62 (2013)). A party "cannot beseech and request the trial court to take a certain course of action, . . . then condemn the very procedure he sought and urged, claiming it to be error and prejudicial." State v. Pontery, 19 N.J. 457, 471 (1955).

From the time plaintiff hired Orloff to represent him in 2006, and pursue his claims against FTV and Nexxar, plaintiff has consistently claimed that UNO's business operations were illegal. Plaintiff's fraud claims were based on the illegality of UNO's business operations. Indeed, at his deposition in the Orloff litigation, plaintiff testified that UNO's business operations were illegal. Therefore, plaintiff is precluded under the doctrine of invited error from arguing that the Orloff court erred by accepting his argument and the evidence he presented of UNO's illegality.

In sum, the trial court correctly determined that plaintiff could not demonstrate actual damages in this case because, as in the Orloff litigation, his

expert reports were inadmissible. Therefore, the court properly granted summary judgment to defendants and dismissed plaintiff's complaint.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3294-21